Mary CAMACHO, et al., and Frederick
S. Timmons, et al., Appellants,

v.

Leo SAMANIEGO, et al., Appellees.

No. 08–95–00329–CV.

Court of Appeals of Texas,
El Paso.

Aug. 21, 1997.

Rehearing Overruled Oct. 29, 1997.

Joseph (Sib) Abraham, Jr., James O. Darnell, Grambling, Darnell, L.L.P., Scott Segall, Martin & Segall, C.R. Kit Bramblett, Bramblett & Bramblett, El Paso, Max Christenson, Odessa, Doris Dipes, Stewart W. Forbes, Woodrow W. Bean, II, El Paso, for appellants.

Edward M. Sosa, Assistant County Attorney, El Paso, Kathleen M. McCulloch, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, for appellees.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This is the second appeal from a summary judgment in this cause. All parties below moved for summary judgment, and the trial court granted the motion filed by the El Paso County Sheriff, Leo Samaniego (the "Sheriff"), and El Paso County (the "County").

The first summary judgment was also granted in favor of the Sheriff and the County. On appeal, this Court dismissed the case based on the trial court's lack of jurisdiction. *Camacho v. Samaniego,* 825 S.W.2d 467 (Tex.App.—El Paso 1991), *rev'd,* 831 S.W.2d 804 (Tex.1992). The Texas Supreme Court reversed that ruling and then addressed the statutory authority of the County under TEX. LOC.GOV'T CODE ANN. § 118.131 (Vernon 1988 & Supp.1997), formerly TEX.REV.CIV.STAT. ANN. art. 3926a, to assess the disputed fees on surety bonds. The Court held that surety bond approval fees imposed on the bonding companies were unauthorized by any Texas statute, and remanded for further proceedings in the trial court on the issue of whether the companies were entitled to refunds for past surety bond fees paid. *Camacho,* 831 S.W.2d at 815.

On remand with respect to the refund issue, the Sheriff and El Paso County (together "Appellees") moved for summary judgment based on sovereign immunity, legislative immunity, official immunity, mistake of law, inapplicability of the statute to the facts, the nonretroactivity of *Camacho,* the statute of limitations, and laches. Appellees also asserted that the Appellants were not entitled to prejudgment interest or to attorneys' fees. Appellants moved for summary judgment on converse grounds, alleging that the Supreme Court had resolved both the issue of statutory authority and the entitlement of the bonding companies to a refund, and had remanded solely on issue of the *amount* of damages to be refunded. Because Appellants believed these damages were liquidated, they asserted that no material fact issue existed and that they were entitled to judgment as a matter of law. The trial court entered a final take-nothing judgment in favor of the Appellees. We affirm in part, and reverse and remand in part.

## SUMMARY OF THE EVIDENCE

### *Agreed Statement of Facts*

This suit involves claims brought by various bail bond companies against the Sheriff and the County. The facts are largely beyond dispute. Initially, some of the companies entered into an agreed statement of facts with the Appellees. Though not all the Appellants were parties to this agreement, it is representative of the factual situation applicable to all parties in this case. Relevant portions of this agreement are as follows:

Effective June 1, 1983, the Sheriff of El Paso County, Texas, as approved by the El Paso County Bail Bond Board on April 27, 1983, commenced requiring bailbondsmen to pay a $2.00 bail bond filing fee on bail bonds filed for release of persons from the El Paso County Jail. The fee is required from bailbondsmen on each and every surety bail bond, both felony and misdemeanor. The fee is not required for cash bonds or personal bonds. Initially, the fee was to be paid at the time of the posting of bail, but was billed instead on a monthly basis. As of January 28, 1987, the bail

bond filing fee is payable at the time the bail bond is presented to the El Paso County Sheriff. The El Paso County Sheriff requires that the fee be paid by any bailbondsman presenting a bail bond to the El Paso County Sheriff as a prerequisite to acceptance of the bail bond by the El Paso County Sheriff, and the release of the principal.

On September 30, 1985, the Commissioner's Court of El Paso County, Texas, raised the bail bond fee from $2.00 to $5.00, effective October 1, 1985.... On January 5, 1987, the Commissioner's Court of El Paso County Texas, raised the fee from $5.00 to $10.00, effective February 1, 1987.... On September 21, 1987, the Commissioner's Court of El Paso County, Texas, raised the fee from $10.00 to $18.00, effective January 1, 1988....

Unless [the Appellant bailbondsmen] pay to the Sheriff of El Paso County, Texas, the Sheriff will not accept [their] criminal bail bonds.

. . .

All of the [Appellant bond companies] pay the fee as an integral part of their doing business as bondsmen in El Paso County, Texas.

### Procedural History

On January 25, 1988, the first suit was brought in County Court at Law No. Two by Mary Camacho, individually and doing business as Afuera Out Bail Bonds ("Camacho"), and Nancy Merrill, doing business as Merrill Bail Bonds ("Merrill"). These plaintiffs claimed that the preconviction bail bond fee charged by the County and collected by the Sheriff was unconstitutional and illegal. They requested a declaratory judgment to that effect, a permanent injunction prohibiting the continued collection of the fees, and

damages in the form of a refund of fees already collected. On April 3, 1989, Frederick Timmons, individually and doing business as Get Free Bail Bonds ("Timmons"), and Alberto De Lachica, individually and doing business as Lachica Bail Bonds ("De Lachica"), filed a similar suit against the Appellees in the 210th Judicial District Court of El Paso County. On April 27, 1989, Timmons' and De Lachica's case was transferred to County Court at Law No. Two and ultimately consolidated with Camacho's and Merrill's suit. These four parties are the original plaintiffs. They filed two motions for class certification, attempting to represent other bonding companies similarly situated, which the trial court denied. On August 1, 1989, Alberto De Lachica amended his petition to add Metro Bail Bonds as another "dba."

Six other bond companies intervened in the consolidated action at various times over the next several months. On August 1, 1989, Alberto Lopez Jr., doing business as Compa Bail Bonds and A–1 Bail Bonds, Fernando Lara Basoco, doing business as El Paso Bail Bonds, and Dolores Solis, doing business as A.D. Solis Bail Bonds, intervened and adopted the Plaintiffs' First Amended Petition filed that same day by Timmons and De Lachica. On August 30, 1989, Odia Harvey, doing business as Amigo Bail Bonds, also intervened and adopted Timmons' and De Lachica's pleadings. On September 14, 1989, Camacho and Merrill filed an amended petition. They were joined in intervention by Armando Camacho, individually and doing business as Camacho Bail Bonds.[1] On September 28, 1989, Kirsten Apodaca, doing business as Apodaca Bail Bonds, intervened and adopted Timmons' and De Lachica's pleadings.[2] These plaintiffs comprise the original intervenors in this case.

After motions for summary judgment were filed on both sides, the trial court, then CountyCourt at Law No. Two, entered a

---

1. For convenience, these plaintiffs may be referred to as the Camacho group. These groupings reflect the fact that various plaintiffs or groups of plaintiffs have filed separate pleadings to which the Appellees have separately responded. To further confuse matters, these plaintiff groupings do not match the groups of plaintiffs that filed motions for summary judgment or that responded to Appellees' motions for summary

judgment. The result is a paper crossfire riddling the record with arguments and other allegations.

2. Timmons and De Lachica, and the group of intervenors adopting their pleadings, are referred to as the Timmons group.

take-nothing judgment in favor of the County and the Sheriff, both individually and in his official capacity. On appeal, this Court dismissed the case, holding unconstitutional the statute[3] purporting to grant the county court at law subject matter jurisdiction to hear a case that challenged actions of the County Commissioners' Court. The Texas Supreme Court then reversed with respect to the constitutionality of TEX.GOV'T CODE ANN. § 25.0732 (Vernon 1988), and held that TEX. LOC.GOV'T CODE ANN. § 118.131 did not authorize the preconviction bail bond fee as the County and the Sheriff contended. Accordingly, the surety fee was illegal pursuant to the prohibition found in TEX.CODE CRIM.PROC. ANN. art. 103.002 (Vernon Supp.1997) against imposing a cost for a service on a criminal defendant that is not explicitly authorized by law. *See Camacho*, 831 S.W.2d at 812–15. The Court remanded on all issues relating to the remedies available to the bonding companies.

On remand, both the Camacho and the Timmons groups, the County, and the Sheriff proceeded to trial on the issue of damages[4] before the same trial judge. However, the case was now heard in the 205th Judicial District Court. On June 30, 1992, Justice Bail Bonds ("Justice") filed suit against the County and the Sheriff in the 34th Judicial District Court. On August 17, 1992, Raymond Telles ("Telles"), individually and doing business as Raymond Telles Bail Bonds, filed a similar suit in the same court. Upon Justice's motion to consolidate and over the objections of the original plaintiffs and intervenors, Justice's and Telles' causes of action were transferred to the 205th and consolidated with the suits by the four original plaintiffs.

On August 8, 1992, Michael York, Jaime Alvarado, Saul Mota, and Greg Swan filed a plea in intervention.[5] These intervenors asserted that they were criminal defendants released from the El Paso County Detention Center pursuant to bail bonds filed by the plaintiff bonding companies. They alleged that they, and not the bail bond companies, had paid the illegal bail bond fees and that they were entitled to a return of the fees paid. They argued that the illegal fee was an integral part of the price they paid the bond companies to secure their release from jail. In addition, they requested that a class of other criminal defendants similarly situated be certified. The Camacho group, the Timmons group, Justice, and Telles each filed motions to strike the intervention,[6] arguing that the Supreme Court had previously determined in *Camacho* that the bond companies were the owners of the illegal fees paid. These plaintiffs also filed briefs in opposition to the class certification. The trial court ultimately certified a partial class of criminal defendants.

On June 1, 1993, the Sheriff and the County filed separate motions for summary judgment. On July 15, 1993, the Camacho and Timmons groups responded to these motions. That same day, these plaintiffs filed their own motion for summary judgment asserting the exact same issues raised in their response.[7] The Sheriff and the County both filed separate responses to this motion. Justice, Telles, and the defendant intervenors each filed separate motions for summary

---

3. TEX.GOV'T CODE ANN. § 25.0732(t)(Vernon Supp. 1997).

4. The Supreme Court decided the declaratory judgment issue when it ruled in *Camacho*. The injunction issue became moot because the County and the Sheriff ceased charging and collecting the preconviction bail bond fee after the *Camacho* decision issued. The only remaining issues were the claims for damages: whether damages in the form of refunds for illegally collected taxes were warranted, and if so, what level of damages was appropriate. Prior to granting summary judgment, the trial court had separated the issue of legal authority to collect the fees and whether damages in the form of refunds were warranted. It is the second issue that concerns us now.

5. These intervenors are referred to as the defendant intervenors.

6. Odia Harvey filed a motion to adopt the Timmons group's motion to strike. Kirsten Apodaca filed a separate motion to strike. A supplemental motion to strike and a brief in support of that motion were filed by both the Camacho and Timmons groups.

7. The only issues that differed in these two documents were various objections to the Sheriff's affidavit in support of his motion for summary judgment.

judgment and responses to the summary judgment motions filed by the Appellees. The issues raised by these motions for summary judgment, and the supplements filed by some of the parties, and the responses to these motions are essentially the same throughout. And, for the most part, they reflect the issues raised on appeal. The trial court granted a take-nothing judgment in favor of the Sheriff and the County.

## STANDARD OF REVIEW

When both sets of parties move for summary judgment, and the trial court grants one motion but denies the other, the result is a final judgment. The set of parties that did not prevail may appeal both the summary judgment granted against it, as well as the denial of its motion for summary judgment. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). All the evidence accompanying both motions should be considered in order to determine whether to grant either one. *Edinburg Consol. Independent School Dist. v. St. Paul Ins. Co.*, 783 S.W.2d 610, 612 (Tex.App.—Corpus Christi 1989, writ denied); *Villarreal v. Laredo National Bank*, 677 S.W.2d 600, 605 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). On appeal, we determine all issues presented, including the propriety of the order overruling the losing party's motion. *Edinburg Consol. Independent School Dist.*, 783 S.W.2d at 612; *Crystal City Independent School Dist. v. Crawford*, 612 S.W.2d 73, 74 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.).

The standard of review on appeal of a summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co., Inc.* 690 S.W.2d 546, 548 (Tex.1985); *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d 629, 631 (Tex.App.—El Paso 1992, no writ). Thus, the question is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *Stoker v. Furr's, Inc.*, 813 S.W.2d 719, 721 (Tex.App.—El Paso 1991, writ denied). Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex. 1983); *Hernandez*, 832 S.W.2d at 633. Alternatively, the defendant-movant must conclusively establish each essential element of an affirmative defense. *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex.App.—Dallas 1992, no writ); *Traylor v. Unitedbank Orange*, 675 S.W.2d 802, 804 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.).

## ISSUES ON APPEAL

Together, the Camacho and Timmons groups have filed a brief in this Court raising five general points of error,[8] alleging generally that the trial court erred in (a) granting the County's motion for summary judgment; (b) granting the Sheriff's motion for summary judgment in his individual and official capacities; (c) denying the bonding companies' motion for summary judgment; (d) allowing the intervenors to intervene; and (e) certifying the intervenors as a class. Telles and Justice raise similar complaints as to the validity of the summary judgment entered in favor of both the County and the Sheriff, while the criminal defendant intervenors attack only the summary judgment granted to the County. Telles and Justice further complain of the trial court's failure to grant Camacho's original effort to certify the bond companies as a class. Collectively, the Ap-

8. Both Justice and Telles filed a separate brief adopting the arguments in this brief.

pellants raise the following issues for resolution:

● whether the County or the Sheriff are entitled to sovereign, official, legislative, and/or judicial immunity;

● whether the Supreme Court's decision in *Camacho* should be applied retroactively;

● whether the bonding companies paid the fee declared illegal in *Camacho* under duress, entitling them to a refund;

● whether TEX.REV.CIV.STAT.ANN. art. 3909 (Vernon 1966)[now codified as TEX.LOC. GOV'T CODE ANN. § 118.801 (Vernon Supp. 1997)], which permits limited punitive damages against officials who extort fees in excess of those prescribed by statute, applies to either the County or to the Sheriff;

● whether limitations and laches should operate to bar some or all of the asserted recovery;

● whether the trial court erred when it allowed the intervention;

● whether the trial court erred when it granted the intervenors' motion for class certification;

● whether the trial court erred when it denied the intervenors relief;

● whether the trial court erred in denying the bonding companies' motion for summary judgment;

● whether the trial court erred in denying Camacho's original efforts to certify the bond companies as a class.

We will address each in turn.

## OVERVIEW: ILLEGAL ACTS BY PUBLIC OFFICIALS

 In order to address Appellants' points of error, we must first discuss the issue ubiquitous to this appeal: the approach taken under Texas law to illegal acts committed by public officials. Texas counties are units of State government. *Rodriquez v. Medical Arts Hospital*, 437 F.2d 1203, 1204 (5th Cir.1971). A county employee's actions taken pursuant to his duties and authorized by State law are considered actions taken by the State of Texas. *See Southwest Airlines Co. v. Texas High–Speed Rail Authority*, 867 S.W.2d 154, 157 (Tex.App.—Austin 1993, writ denied). The present case presents the converse. Because the suit was brought to obtain a declaratory judgment that the actions of a unit of State government were unauthorized by State law, it is not a suit against the State of Texas or its subdivisions. *See Texas Highway Commission v. Texas Association of Steel Importers, Inc.*, 372 S.W.2d 525, 530 (Tex.1963); *State of Texas v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 582 (1961); *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 153 (1960); *State of Texas v. Epperson*, 121 Tex. 80, 42 S.W.2d 228, 231 (1931); *Lowrey v. University of Texas Medical Branch*, 837 S.W.2d 171, 176–77 (Tex.App.—El Paso 1992, writ denied); *Dillard v. Austin Independent School Dist.*, 806 S.W.2d 589, 597–98 (Tex. App.—Austin 1991, writ denied); *Commissioner, Texas Department of Human Services v. Trinity Coalition, Inc.*, 759 S.W.2d 762, 763 (Tex.App.—El Paso 1988, writ dism'd w.o.j.); *Perry v. Texas A & I University*, 737 S.W.2d 106, 109 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Battleship Texas Advisory Board v. Texas Dynamics, Inc.*, 737 S.W.2d 414, 418–19 (Tex.App.— Houston [14th Dist.] 1987, writ dism'd w.o.j.); *Byrnes v. University of Houston*, 507 S.W.2d 815, 817 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.); and *Texas Liquor Control Board v. Diners' Club, Inc.*, 347 S.W.2d 763, 766 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.). Thus, if a sheriff collects a fee in accordance with the duties of his office and a court subsequently determines that the fee lacks any authority under State law, the sheriff has not acted on behalf of the county or the State:

> The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and protection of his rights, is not a suit against the State within the rule of immunity of the State from suit.

*Bagg v. University of Texas Medical Branch*, 726 S.W.2d 582, 585 (Tex.App.— Houston [14th Dist.] 1987, writ ref'd n.r.e.), citing *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945).

The principle that acts committed by State officials without statutory authority are not acts of the State of Texas or its subdivisions applies to two very different types of cases. The first involves a fact situation similar to this one, in which public officials acting in good faith on the instructions given to them by their superiors, commit acts that are subsequently found to lack statutory authority. Sheriff Samaniego collected the disputed fee in good faith at the behest of County Commissioners' Court. The record contains no indication that the Sheriff collected the fee on his own volition without the Commissioners' authorization, or for his own profit, or covertly, or in any manner that was otherwise illegal. Indeed, the Sheriff and the Commissioners all believed that the fee was authorized by statute. The Supreme Court acknowledged in *Camacho* that the County's statutory construction had "some appeal," noted that the legislative history concerning the application of this provision to criminal fees was "not absolutely certain," and observed that two of the plaintiffs had conceded the accuracy of the County's interpretation. *Camacho*, 831 S.W.2d at 813–14. These illegal acts were not deliberate attempts to seek gain for the County or for individual public officials through deliberate violations of the law. The illegal collection of a bail bond fee in good faith, within the scope of the Sheriff's authority, and in the belief that statutory authorityexisted for the fee, resembles the type of illegal acts committed in *Cobb*, 190 S.W.2d at 709. There, lessees of commercial trucks sued for a declaratory judgment and a refund, arguing that the State Comptroller had illegally required them to pay a fee under an occupation tax statute that was applicable to motor carriers. The Supreme Court agreed that the carrier tax did not apply to the lessees. The case of *Austin National Bank v. Sheppard*, 123 Tex. 272, 71 S.W.2d 242, 246 (1934), also addressed the illegal collection of fees or taxes as a result of good faith statutory misinterpretation, emphasizing that the Secretary of State had acted in good faith in collecting the illegal fee, but was mistaken. *Sheppard*, 71 S.W.2d at 246.

The second factual scenario belongs in the category of illegal acts by public officials which may be characterized as *ultra vires* acts: where a State official exceeds the authority conferred on him by statute on his own volition. For example, in *Bagg*, the plaintiff alleged that his supervisors had wrongfully terminated him from his employment at the University of Texas Medical Branch at Galveston and took actions that far exceeded their authority as agents of the medical school. The court concluded that the plaintiff's suit had to be brought against the individual officials who had allegedly violated his rights, since an official who takes actions outside his legal authority does not act on behalf of the State. *Bagg*, 726 S.W.2d at 585.

Both the *Cobb* and *Bagg* scenarios involve illegal acts that cannot be attributed to the State of Texas or its subdivisions. As will become clear, however, Texas law treats these two scenarios differently when evaluating the remedies available to citizens whose rights have been violated. First, however, we turn to whether there is a significant discrepancy between the Supreme Court's opinion on the one hand, and its judgment and mandate on the other, arising from the initial appeal in *Camacho*, 831 S.W.2d at 804.

## CONFLICT BETWEEN SUPREME COURT'S OPINION AND JUDGMENT

The *Camacho* opinion declares the bail bond fee illegal. The Supreme Court summarized its holding as follows: "We further hold, however, that the *county* was not authorized to impose the fee in question. Accordingly, we reverse the judgment of the court of appeals, render a declaration that the fee is illegal, and remand to the trial court for further proceedings." [Emphasis added]. *Camacho*, 831 S.W.2d at 805. More explicitly, the Court framed the issues to encompass both the actions of the County Commissioners' Court and the Sheriff. "The merits of this case require us to determine whether the El Paso County Commissioners Court is authorized by statute to impose, and the Sheriff of El Paso county to collect, a pre-conviction bail bond approval fee from bail bond businesses." *Id.* at 811. As these excerpts make clear, the opinion referenced the County itself, as well as the County's role

in acting as the Commissioners' Court (in creating the pre-conviction bail bond approval fee) and as the Sheriff (in collecting the bail bond fee). By contrast, the Court's judgment declared the fee illegal, but only reversed the summary judgment with respect to the Sheriff:

> We hold that Texas Government Code section 25.0732(t) is constitutional and we reverse the court of appeals holding to the contrary. We also reverse the county court at law's summary judgment for the Sheriff and render judgment for the bond businesses because we find that, as a matter of law, the bond approval fees imposed on bondsmen by the El Paso County Commissioners Court and collected by the Sheriff are not authorized by any Texas statute.

*Camacho,* 831 S.W.2d at 815. Absent from the judgment is an explicit statement that the Court reversed the summary judgment in favor of the County.

■ Any conflict between the language of the opinion and the judgment in *Camacho* must be resolved in favor of the judgment. *Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274, 276 (Tex.1996). We conclude, however, that the language contained in the judgment does not actually conflict with its opinion, given the nature of the Court's holding. The Supreme Court's omission of the County from its judgment resulted directly from the principle that acts performed by State officials that are subsequently declared to lack statutory authority cannot be attributed to the State, and the State is not considered a party to actions seeking relief. Because the Appellants sought a declaratory judgment that actions taken by the County Commissioners' Court and the Sheriff lacked statutory authorization, the County as a unit of State government was not an appropriate party to the suit. *Bagg,* 726 S.W.2d at 585 ("[w]hen a plaintiff seeks injunctive relief that involves an activity of a state agency he must sue some individual in authority at that agency; he may not sue the agency itself. . . . If the alleged wrongful actions are not state actions, the state cannot be the proper party to sue."). Although *Bagg* involved injunctive rather than declaratory relief, the same prin-

ciple applies. *See for example Cobb,* 190 S.W.2d at 712–13. Sheriff Samaniego was the only official individually named in this lawsuit. The Supreme Court reversed the summary judgment only as to the county official individually named as a defendant. Because the inability of a plaintiff to name a unit of State government in a suit alleging illegal acts is a matter of subject matter jurisdiction, the presence of the County as a named party throughout this convoluted litigation makes no difference to our conclusion. *See Bagg,* 726 S.W.2d at 585 (State agency's motion arguing that agency cannot be a party to an action alleging illegal acts by public officials is properly characterized as a plea to the jurisdiction).

## INDIVIDUAL LIABILITY

If illegal acts by public officials cannot be attributed to the State, and a party who alleges injury from illegal acts cannot name the State or its subdivisions as parties, we must ascertain in what capacity the named public officials can be sued. *Camacho* is silent on the issue. Summary judgment in favor of the Sheriff was reversed without regard to whether the remand would be litigated against the Sheriff in his individual capacity, his official capacity, or both.

■ At first blush, the reasoning in *Bagg* and its progeny would appear to resolve the issue. The principle that illegal acts cannot be attributed to a unit of State government would appear to automatically preclude the assignment of illegal acts to State or county officials in their official capacities. However, this case involves a different type of illegal act. *Bagg* involved *ultra vires* acts for which the governmental entity retained immunity and the offending public officials were appropriately sued in their individual capacities. Here, however, we are presented with the illegal collection of fees by a public official acting in good faith, pursuant to what he believed to be his legal duties, but whose actions were ultimately declared to be illegal. It presents the anomalous situation in which actions are considered illegal and therefore not committed by the unit of State government, and yet the individual officials who

committed the actions are sued in their official capacities.

The RESTATEMENT (SECOND) OF JUDGMENTS § 36 cmt. e. (1982) states:

> e. *Application to actions against officials. A public official sued as an individual nevertheless participates in the action in his official capacity if the remedy sought is that of compelling, restraining, or making declarations concerning performance of acts in the course of his official duties, or the restitution of property over which he asserts control in virtue of his official authority.* If the remedy sought is damages and the public body of which he is an official is solely responsible for paying them, the public official likewise appears in his official capacity and is in effect merely a formal party. See § 37. The determination in such circumstances is therefore binding on the governmental body of which he is an official and on his successors in office, but in accordance with the rule stated in § 36, is not binding on him personally. *Where, however, the remedy is for damages that he is asserted to have a personal obligation to pay, he participates in his individual capacity.* [Emphasis added].

Illustration 12 to Comment (e) explains the capacity in which an individually named public official participates in a suit with facts closely analogous to the present case:

> 12. A sues B, the state treasurer, to compel B to refund taxes A alleges were unlawfully collected. If under applicable law B can be directed to refund the tax from state assets, *B participates in his capacity as an official of the state and the state is bound, even if suit might not have been brought naming the state itself as defendant.* [Emphasis added].

Illustration 13 to Comment (e) contrasts the scenario described in Illustration 12 with a suit in which the public official must participate in his individual capacity:

> 13. A sues B, a police captain, for damages for injuries sustained when C, a policeman under B's command, used unnecessary force in detaining A. *A seeks recovery from B personally on the ground that B was negligent in selecting and supervising*

C. *B participates in his individual capacity.* [Emphasis added].

*See* RESTATEMENT (SECOND) OF JUDGMENTS § 36 cmt. e., illus. 12 and 13 (1982).

Consistent with Section 36, we conclude that the Sheriff faces liability in his official capacity only. The trial court properly granted summary judgment with respect to all claims brought against Sheriff Samaniego in his individual capacity. In *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 296 (1967), the United States Supreme Court determined that a law enforcement officer could not be held individually liable for "acting under a statute that he reasonably believed to be valid but that was later held unconstitutional on its face or as applied." *See also Lowrey,* 837 S.W.2d at 176–77 (summary judgment as to claims against medical school officials in an individual capacity held proper where plaintiffs failed to allege *ultra vires* acts committed by individual officials).

We do not address those arguments that pertain solely to El Paso County as a separately named entity because the County was not properly named as a party. We now address the liability of the Sheriff in his official capacity.

### SOVEREIGN IMMUNITY

■ The Camacho and Timmons groups complain that the trial court erred in granting summary judgment for the Sheriff, and argue that sovereign immunity cannot bar recovery from the Sheriff in his official capacity. Telles and Justice raise this same issue. We agree.

The trial court granted summary judgment to the County and the Sheriff on the issue of sovereign immunity. We have determined that the County was not a proper party to this suit. Since the wrongful actions cannot be characterized as actions by the State, the State cannot be the proper party to sue, and sovereign immunity cannot bar the suit:

> The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and pro-

tection of his rights, is not a suit against the State within the rule of immunity of the State from suit.

*Cobb,* 190 S.W.2d at 712; *Bagg,* 726 S.W.2d at 585. The County and the Sheriff contend that this principle applied strictly to the declaratory judgment issue already decided in the bonding companies' favor, and that the refund is a distinct issue, subject to the principles of sovereign immunity in its own right. We disagree with this interpretation. As the *Sheppard* Court held, the revenue generated from a fee determined to be illegal should not be treated as State property to which the principles of sovereign immunity apply, and an illegally collected fee should be refunded if paid under duress, without respect to the existence of a waiver of immunity. No legislative consent is needed. *Sheppard,* 71 S.W.2d at 246; *Crow v. City of Corpus Christi,* 146 Tex. 558, 209 S.W.2d 922, 924 (1948); *National Biscuit Co. v. State,* 134 Tex. 293, 135 S.W.2d 687, 692–93 (1940). We conclude that sovereign immunity does not shield the Sheriff in his official capacity.

## OFFICIAL IMMUNITY

■ The Camacho and Timmons groups also argue that qualified, or official immunity does not shield the Sheriff acting in his official capacity. Again we agree. Official immunity is an affirmative defense, and the burden to prove all its elements is on the defendant who claims immunity. *Boozier v. Hambrick,* 846 S.W.2d 593, 597 (Tex.App.— Houston [1st Dist. ] 1993, no writ). Public officials and employees are shielded from liability if they can demonstrate that (1) they acted in good faith; (2) they acted within the course and scope of employment; and (3) their positions involve "quasi-judicial" or "discretionary" duties. *Gonzalez v. Avalos,* 866 S.W.2d 346, 349 (Tex.App.—El Paso 1993, writ dism'd w.o.j.), *citing Eakle v. Texas Dep't of Human Services,* 815 S.W.2d 869, 875 (Tex.App.—Austin 1991, writ denied). A public employee's job may involve some quasi-judicial or discretionary responsibilities, and some "ministerial" or "non-discretionary" responsibilities. *Gonzalez,* 866 S.W.2d at 349. The fact that a public official's act was mistaken, wrong, or negligent does not mean that the official acted outside the scope of his or her authority. *Harris County v. Ochoa,* 881 S.W.2d 884, 888 (Tex. App.—Houston [14th Dist.] 1994, writ denied). If a court determines that official immunity protects a government employee from liability, then the sovereign immunity of the governmental entity remains intact. *Ochoa,* 881 S.W.2d at 889–90.

■ With respect to the first element, the Sheriff has demonstrated that he collected the bail bond fees in good faith in order to discharge a duty imposed on him by the County Commissioners' Court. The second element creates more difficulties. The public official claiming the protection of official immunity must demonstrate that he carried out the disputed actions in the course and scope of employment. In one sense, the Sheriff acted within the course and scope of his employment in carrying out the task that the Commissioners' Court required of him, and did not exceed the powers available to him in doing so. This situation is fundamentally different than one in which public officials, on their own volition, exceed their authority. However, the fact that he acted in good faith in carrying out a responsibility imposed on him by the Commissioners does not answer the question whether he acted within the course and scope of his employment when he collected the illegal fee. The course and scope of employment for a public employee is defined by statute. If the public employee acts without statutory authority, then he cannot act within the course and scope of employment. The question is not whether State officials were acting on behalf of the State to accomplish a proper governmental purpose, but whether the action is authorized by law. *Bagg,* 726 S.W.2d at 585, *citing Griffin v. Hawn,* 341 S.W.2d at 153. We conclude that the Sheriff's collection of a bail bond fee unauthorized by any statute cannot be protected by official immunity. Appellants further argue that the Sheriff has also failed to satisfy the third element required for the application of official immunity, since the collection of the fee constituted a ministerial rather than discretionary act. *Advance Imports, Inc. v. Gibson Products Co. Inc. of Sherman,* 533 S.W.2d 168, 170 (Tex.Civ. App.—Dallas 1976, no writ); *Benge v. Foster,*

47 S.W.2d 862, 864 (Tex.Civ.App.—Amarillo 1932, writ ref'd). We find the characterization of the fee collection as a ministerial act persuasive. However, because we believe that the unlawful nature of the bail bond fee precludes the possibility that its collection could be protected by official immunity, we express no opinion as to whether the Sheriff's actions were ministerial or discretionary.

## LEGISLATIVE IMMUNITY

 The Camacho and Timmons groups further argue that the Sheriff is not entitled to legislative immunity. Telles and Justice raise the same issue; once again, we agree.

Sheriff Samaniego counters that he was entitled to legislative immunity because he was performing his duties by carrying out the orders of the Commissioners' Court, and that he was therefore entitled to the same immunity that the individual members of the Commissioners' Court enjoyed. Other courts of appeals addressing this question have disagreed whether sheriffs collecting an illegal bail bond fee merely carried out the orders of the commissioner's courts such as to entitle them to absolute legislative immunity. In *Bowles v. Clipp*, 920 S.W.2d 752, 759 (Tex.App.—Dallas 1996, writ denied), the Dallas Court concluded that legislative immunity did not apply to the actions of a county sheriff in this context. Other courts have reached the opposite conclusion. *See Merrill v. Carpenter*, 867 S.W.2d 65, 68 (Tex. App.—Fort Worth 1993, writ denied); *Vannerson v. Klevenhagen*, 908 S.W.2d 37, 41 (Tex.App.—Houston [1st Dist.] 1995, writ denied); and *Bowles v. Reed*, 913 S.W.2d 652, 658 (Tex.App.—Waco 1995, writ denied). After a careful review of the facts in the present case, we are persuaded by the reasoning in *Bowles*.

 In *Tenney v. Brandhove*, 341 U.S. 367, 376–77, 71 S.Ct. 783, 788, 95 L.Ed. 1019, 1027–28 (1951), the United States Supreme Court held that, under the common law as well as the Speech or Debate Clause to the United States Constitution, state legislators,"acting in the sphere of legitimate legislative activity" were "immune from deterrents to the uninhibited discharge of their legislative duty," like members of Congress. With few exceptions, legislative immunity is absolute, protecting legislators from litigation resulting from decisions made in a legislative capacity, and from the burden of defending themselves in such litigation. *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 730–31, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641, 656–57 (1980). Further, local officials acting in a legislative capacity enjoy absolute legislative immunity under the common law analogous to that enjoyed by members of Congress and State legislators. *Collin County, Texas v. H.A.V.E.N.*, 654 F.Supp. 943, 949 (N.D.Tex.1987), *citing Espanola Way Corp.v. Meyerson*, 690 F.2d 827, 829 (11th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). Texas courts have acknowledged that absolute legislative immunity extends to local officials acting in a legislative capacity. *See for example Clear Lake City Water Authority v. Salazar*, 781 S.W.2d 347, 349–50 (Tex.App.—Houston [14th Dist.] 1989, no writ)(thought processes underlying city water authority officials' decision protected from discovery by absolute legislative immunity). Because the jurisprudence of legislative immunity is not well developed in Texas, we will rely on federal authorities to assess the applicability of this form of immunity to the case before us. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994)(employing federal case law to construe official immunity questions).

 With respect to local officials such as the County Commissioners and Sheriff here, the question arises as to what kinds of activities exist within "the sphere of legitimate legislative activity." In *Minton v. St. Bernard Parish School Board*, 803 F.2d 129, 135 (5th Cir.1986), the Court held that absolute legislative immunity applied only to "functionally legislative" activities. Actions to which courts have extended absolute legislative immunity include a mayor's veto of an ordinance passed by a city council, the examination of a witness before a legislative committee, and voting on controverted ordinances after conducting meetings with partisans on one side of a zoning controversy. *Collin County, Texas*, 654 F.Supp. at 949,

citing *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1194 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Tenney v. Brandhove*, 341 U.S. 367, 377–78, 71 S.Ct. 783, 788–89, 95 L.Ed. 1019, 1027–28 (1951); and *Bruce v. Riddle*, 631 F.2d 272, 279–80 (4th Cir.1980). When an official with legislative duties engages in activities insufficiently connected with the legislative process to raise genuine concern that inquiry into the motives for his actions would thwart his ability to perform legislative functions, absolute legislative immunity does not apply. *Minton*, 803 F.2d at 135. Although no clear standard exists to distinguish legislative from non-legislative acts, courts employ a fundamental distinction between establishing a policy, act, or law, as opposed to enforcing or administering an already-established policy, act, or law. *Hughes v. Tarrant County Texas*, 948 F.2d 918, 921 (5th Cir.1991); *citing Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir.1984)(city council's enforcement of an existing municipal contract to deny access to an amphitheater not protected by absolute legislative immunity); *Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir.1983)(zoning officials' denial of a building permit constituted enforcement of an existing zoning ordinance and was not protected); and *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir.1984)(no absolute legislative immunity where planning board placed conditions on approval of building permit; this action constituted specific enforcement action against one individual, rather than the creation of general policy applicable to all building applicants).

The creation of the illegal bail bond fee by the Commissioners' Court was a functionally legislative act. Had the bonding companies attempted to sue the Commissioners in their individual capacities, the Commissioners would have enjoyed absolute legislative immunity. However, we cannot conclude that the collection of the fee by the Sheriff was functionally legislative. He acted to enforce the fee once it had already been created. As a result, his collection of the fee is not entitled to absolute legislative immunity.

## JUDICIAL IMMUNITY

Sheriff Samaniego urges that even if we find that legislative immunity does not protect the actions declared illegal by the Supreme Court, we should nevertheless conclude that he is protected by judicial immunity. He cites *Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 110 (Tex.1981) for the principle that commissioners' courts are part of the judicial branch of Texas government. TEX. CONST. art. V, § 1. He further references *Merritt v. Harris County*, 775 S.W.2d 17, 23 (Tex.App.—Houston [14th Dist.] 1989, writ denied) as authority that constables, as officers of the court, had a duty to execute processes and were considered under the court's control when carrying out this duty. The Sheriff analogizes his duty in collecting the bond fees to the constable executing process to evict private tenants.

 Judicial officers acting in a judicial capacity enjoy common law immunity which can only be abrogated in "really extraordinary causes." *See generally Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). However, the placement of county commissioners' courts in the judicial branch does not render all actions of a commissioners' court judicial in character. We have already determined that the creation of the illegal bail bond fee by the El Paso County Commissioners was a "functionally legislative act." In *Merritt*, by contrast, the constables who executed the disputed writs carried out the orders of a court subsequent to a proceeding that was clearly of a judicial nature. We cannot conclude that judicial immunity serves to shield the actions of the Sheriff here.

### *CAMACHO* APPLIES RETROACTIVELY

 The Camacho and Timmons groups argue that the trial court erred in denying the bond companies' motion for summary judgment. This argument is premised on the contention that the Supreme Court's *Camacho* opinion should be given both retroactive and prospective effect. Telles and Justice raise the same issue.

The Sheriff argues against retroactive application and cites as authority decisions such

as *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), and *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), in which the United States Supreme Court addressed constitutional challenges to state taxing schemes, and *Carrollton–Farmers Branch Independent School Dist. v. Edgewood Independent School Dist.,* 826 S.W.2d 489 (Tex.1992), in which the Texas Supreme Court discussed considerations for deciding whether a decision will apply prospectively only.

In both *Bacchus* and *Beam,* the United States Supreme Court explained that a legal decision on the constitutional validity of a state taxing scheme could be applied either retroactively or prospectively on remand. In *Beam,* the Court further found that even though it had agreed with the taxpayers by declaring that the taxing scheme violated the Commerce Clause, the taxpayers were not automatically entitled to a refund. The Court remanded on the issue of refund in order to give the state court the opportunity to develop the record and determine what remedy was appropriate, considering the equitable and reliance interests of the parties. *Beam,* 501 U.S. at 540, 111 S.Ct. at 2446.

In *Edgewood,* the Texas Supreme Court adopted a three-part test to determine retroactivity of its opinions:

● whether the decision announces a new rule of law by overruling past precedent or by deciding an issue of first impression whose outcome was not clearly foreshadowed;

● whether an evaluation of the rule's prior history suggests that a retroactive application of the decision would further or retard the policy concerns underlying the rule;

● whether an evaluation of the facts of the case suggests that a retroactive application would result in greater inequities than a strictly prospective holding.

*Edgewood,* 826 S.W.2d at 519–20. *See also Lohec v. Galveston County Commissioner's Court,* 841 S.W.2d 361, 366 (Tex.1992).

██ Arguably, an evaluation of the facts of this case under these factors could lead to a strictly prospective application of *Camacho.*

This is especially true with respect to the first factor—*Camacho* announced a new rule of law by overruling past precedent. With respect to the third factor, while we believe that a retroactive application will have a considerable economic impact on the County and those who benefit from its services, we reiterate that this form of hardship should not prevent a refund that is otherwise justified. A tax or fee collected without statutory authority should not be considered the property of the governmental entity. *Cobb,* 190 S.W.2d at 712. *See also Sheppard,* 71 S.W.2d at 246 (Illegal fee collected under duress never becomes property of the state as against the real owner; therefore, person paying illegal tax has claim for repayment even if the money has already gone into treasury and been paid out by disbursing officers).

Still further, the Texas Supreme Court has determined that its decisions operate "retroactively unless this Court exercises its discretion to modify that application." *Bowen v. Aetna Casualty and Surety Co.,* 837 S.W.2d 99, 100 (Tex.1992). All of the authority cited by the Sheriff in support of his "prospective only" argument involve cases in which the Supreme Court was evaluating whether to restrict its own holdings. *Camacho* is silent on the issue of retroactivity. Because the Supreme Court did not specifically apply *Camacho* prospectively, it must be applied retroactively.

## DURESS

The Camacho and Timmons groups argue that the illegal fees should be refunded because they were paid under duress. Telles and Justice raise the identical issue. We agree for two reasons. First, the failure to pay the illegal fee would have had a drastic effect on the bond companies' ability to conduct their business. Second, the County could impose this detriment on the companies without recourse to the courts.

██ Texas courts have consistently held that voluntary payment of an illegal tax will not support a claim for repayment. *City of Houston v. Feizer,* 76 Tex. 365, 13 S.W. 266, 267 (1890); *First Bank of Deer Park v.*

*Harris County,* 804 S.W.2d 588, 594–95 (Tex. App.—Houston [1st Dist.] 1991, no writ); *Sheldon v. Jasper Independent School Dist.,* 768 S.W.2d 884 (Tex.App.—Beaumont 1989, writ denied); *Johnson Controls, Inc. v. Carrollton–Farmers Branch Independent School Dist.,* 605 S.W.2d 688, 690 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Howell v. City of Dallas,* 549 S.W.2d 36, 37 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). Mutual mistake of law is not a valid ground for repayment of a tax or fee. *Gould v. City of El Paso,* 440 S.W.2d 696, 698–99 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.). A person who has paid an illegal fee or tax can receive a refund only upon a showing that the payment resulted from fraud, mutual mistake of fact, or duress, whether implied or express. *Salvaggio v. Houston Independent School Dist.,* 709 S.W.2d 306, 308 (Tex. App.—Houston [14th Dist.] 1986, writ dism'd). The bonding companies' claim implied duress as a basis for repayment of the illegal fees collected.

■ We observe that any failure to pay a tax or fee ultimately results in some detriment or penalty. As a result, a claimant who seeks the refund of an illegally paid fee must do more than demonstrate that a penalty or other detriment would have resulted from nonpayment. *See for example Johnson Controls,* 605 S.W.2d at 690 (threat imposed by statute providing for imposition of penalties and interest for failure to pay taxes when due was insufficient to raise material question of fact on issue of implied duress); and, *Texas National Bank of Baytown v. Harris County,* 765 S.W.2d 823, 825 (Tex.App.—Houston [14th Dist.] 1988, writ denied)(illegal taxes paid to avoid penalties, interest, and black mark on bank audit were not paid under duress absent showing that failure to pay would result in summary forfeiture of right to do business).

■ After reviewing the cases that address the repayment of illegal taxes or fees, we conclude that two factors distinguish a fee or tax paid under duress from a voluntary payment: (1) the type of detriment that results to the taxpayer from a failure to pay; and (2) the type of mechanism available to the governmental entity to ensure payment.

### Type of Detriment

■ If the failure to pay an illegal tax or fee will foreclose the ability of a business to continue operating, or causes financial loss or closure of the business, this first element will be satisfied. *See Metropolitan Life Insurance Co. v. Mann,* 140 Tex. 450, 168 S.W.2d 212, 215 (1943); *Crow v. City of Corpus Christi,* 146 Tex. 558, 209 S.W.2d 922, 924–25 (1948); *State v. Connecticut General Life Insurance Co.,* 382 S.W.2d 745, 747–48 (Tex. 1964); *National Biscuit Co.,* 135 S.W.2d at 687; and *Sheppard,* 71 S.W.2d at 242. In each of these cases, the courts concluded that the parties seeking repayment of illegally collected fees or taxes had demonstrated the necessary form of detriment that would have resulted from nonpayment: payment was necessary to continue the operation of the business.

### Type of Enforcement

The second element common to those cases requiring a refund of illegally collected taxes concerns the enforcement mechanism available to the governmental entity. If the entity has to seek payment through the courts, such as a suit to collect back property taxes, then no duress is present. If the governmental authority can impose a penalty without recourse to the courts, however, then duress is present. This requirement is logical when one considers the options available to the taxpayer. If the governmental entity must resort to legal action, then the taxpayer can realistically protest the tax and refuse to pay it without suffering irreparable harm. Under these circumstances, payment can be characterized as voluntary even if the tax or fee is illegal. However, if the penalties for nonpayment can be exacted without legal action, a taxpayer's refusal to pay can have drastic consequences. For example, in *Sheppard,* the Court explained the possible consequences of a refusal to pay, given that no court action was required to revoke the taxpayer corporation's charter:

> If the asphalt company had refused to pay such fee, it could not have gotten its charter amendment filed without resorting to the courts, and would have run the risk of

having its right to do business in this state and its right to resort to the courts of this state called in question during the litigation. Also during such period it would have run the risk of having its business greatly hampered and injured.

71 S.W.2d at 246.

█ Here, the bonding companies did not suffer the same kind of penalties at issue in *Sheppard, National Biscuit, Metropolitan Life,* or *Connecticut General Life.* The County could not have revoked the companies' right to do business for failure to pay the bond fees. However, the companies could not conduct their business without paying the illegal fees because the Sheriff would not approve a bond unless the fee had been paid. In this instance, the companies would have suffered the penalty immediately—failure to pay the fee would have prevented them from issuing bonds. We find that the bond companies have satisfied the first element necessary to show payment under duress.

We also conclude that they have established the second element. The County could impose the penalty for failing to pay the bond approval fees without recourse to the courts. Had the companies failed to pay, the bond would not have been processed. Thus, they suffered an immediate detriment for refusing to pay. As the *Sheppard* Court explained, where the governmental entity requires no decision from a court before it imposes the penalty, the taxpayer's refusal to pay pending the outcome of a declaratory judgment action could result in serious harm to the taxpayer's business. Having demonstrated that they paid the bond approval fees under implied duress, and the companies are entitled to a refund, we now move to the question of what monies are recoverable.

### ARTICLE 3909

█ The Camacho and Timmons groups argue that they are entitled to fourfold damages under TEX.REV.CIV.STAT.ANN. art. 3909 (current version at TEX.LOC.GOV'T CODE ANN. § 118.801) which provided that "[i]f any officer named in this title shall demand and receive any higher fees than are prescribed to them in this title, or any fees that are not allowed by this title, such officer shall be liable to the party aggrieved for fourfold the fees so unlawfully demanded and received by him." *Id.* We conclude that Appellants' claim for fourfold damages pursuant to the extortion provision of the Local Government Code rests on a misunderstanding of the type of illegal acts involved here. As we have already discussed, acts committed without statutory authority are not considered acts of the State of Texas or its subdivisions. The Sheriff collected the disputed fee in good faith at the direction of the County Commissioners, all of whom believed that the fee was authorized by Texas statute. The illegal acts were not deliberate attempts to seek gain for the County or for individual public officials through deliberate violations of the law. The type of willful misuse of public office to extort excessive fees contemplated by TEX.LOC. GOV'T CODE ANN. § 118.801 would require a public official's willful abuse of his office, the type of *ultra vires* acts addressed in *Bagg* and its progeny.

### STATUTE OF LIMITATIONS AND LACHES

In addressing the argument that the trial court erred in granting summary judgment to the Sheriff, the Camacho and Timmons groups argue that a two-year statute of limitations should not apply to their claims. Telles and Justice join in this argument. We disagree.

Suits for the conversion of personal property and the taking or detaining of personal property are governed by a two-year statute of limitations. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). Texas courts have applied this provision to claims against county governments and officials for repayment of fees and fines. *See Falls County v. Mires,* 218 S.W.2d 491, 494 (Tex.Civ.App.—Waco 1949, writ ref'd); *Arquette v. Hancock,* 656 S.W.2d 627, 629 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Appellants assert that the statute of limitations did not begin to run until their claims were rejected by the County Commissioners' Court. The Sheriff contends that limitations began to run when the fees were imposed; otherwise the Appellants could forego bringing an action for

years and thereby thwart the very purpose of limitations.

▪ Regardless of the merits of the Sheriff's argument, actions against a county are governed by TEX.LOC.GOV'T CODE ANN. § 81.041(a) which provides that "[a] person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim." *See El Paso County v. Elam*, 106 S.W.2d 393, 396 (Tex.Civ.App.—El Paso 1937, no writ); *cf. Fields v. City of Texas City*, 864 S.W.2d 66, 70 (Tex.App.—Houston [14th Dist.] 1993, writ denied)(holding that this provision does not apply to cities). Laches provides an exception to the rule. Where a plaintiff becomes aware of a claim but does not assert it within the time period prescribed by the applicable statute of limitations, laches operates to bar that claim. *See Wade v. Jackson County*, 547 S.W.2d 371, 375 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

▪ We recognize that *National Biscuit* did not apply laches to bar the claim of a taxpayer seeking the recovery of illegal taxes paid under duress, relying on the principle articulated in *Sheppard* that a person does not have to refuse to pay illegal taxes in order to receive a refund if the State can impose penalties for nonpayment without first filing suit. *National Biscuit Co.*, 135 S.W.2d at 693; *Sheppard*, 71 S.W.2d at 246. We conclude that *National Biscuit* misapplied this principle with respect to the doctrine of laches. A taxpayer can continue to pay the illegal fee or tax under duress in order to prevent his business from being shut down, and still receive a refund after the tax or fee is declared illegal. The taxpayer is not required to refuse to make payment. However, the doctrine of laches still applies to the taxpayer with respect to his legal claim that the fee or tax is illegal. The taxpayer who pays under duress will suffer a penalty for *refusing to pay the tax or fee*, not for *filing suit*. *Sheppard* simply held that *while the legality of the fee or tax was being adjudicated*, the taxpayer was not required to refuse payment of the illegal tax. The taxpayer is still responsible for pursuing

the adjudication of the fee or tax in a timely manner.

Appellants' claims for a refund of fees paid more than two years prior to the presentation of their claims to the Commissioners' Court are barred by laches. A fact question exists as to whether and when the claims for each Appellant were presented to the Commissioners' Court.

## THE CRIMINAL DEFENDANTS INTERVENTION

The Camacho and Timmons groups assert that the trial court erred in overruling their motions to strike the criminal defendants' plea in intervention. Appellants assert that the Supreme Court in *Camacho* determined the ownership issue concerning the fees paid to the County. They argue that the intervenors' petition is nothing more than an attempt to re-litigate issues decided by the Supreme Court. Telles and Justice also raise the issue. We agree, but not for the reasons advanced by the bond companies.

▪ The trial court has broad discretion in ruling on a motion to strike an intervention. *See Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). We will disrupt the trial judge's ruling only upon a showing of a clear abuse of discretion. *Id.* It is an abuse of discretion for a trial judge to overrule a motion to strike an intervention that does not meet certain requirements. *Horseshoe Operating Co.*, 793 S.W.2d at 657. One requirement is that the intervenor must have a justiciable interest in the controversy. *Id.* The intervenors here filed a plea in intervention *against the County and Sheriff Samaniego* asserting that they paid the illegal pre-conviction bail bond fees, not the bail bond companies. The gist of their claim rests on the assertion that the bail bond companies paid the fees to the Sheriff and then charged a commensurate amount to the criminal defendants as part of the service. In other words, they allege that they were the true injured parties and that the bail bond fees were indirectly aimed at them.

This argument disregards the fact that the Supreme Court repeatedly referred to the

fees as having been "imposed on bondsmen." *Camacho*, 831 S.W.2d at 815. The cause of action exists between the bonding companies and the County because the companies *paid* the fees that were *imposed* on them. It does not matter, with respect to this cause of action, whether the bail bond companies paid the fees with their own funds or with funds collected from the defendant intervenors. Thus, the intervenors' claims lie against the bail bond companies, not the County.

We conclude that the trial court abused its discretion in overruling the motions to strike. We do not address the issue of class certification.

## SUMMARY JUDGMENT FOR THE BONDING COMPANIES

 Appellants contend that summary judgment should have been granted in their favor. However, significant fact issues exist concerning when claims were lodged with the Commissioners' Court for the purpose of applying the doctrine of laches and concerning the calculation of damages. The County vigorously disputes the damages alleged in the affidavits of various bondsmen used as summary judgment evidence, asserting that the bond companies are attempting to collect fees paid by other bond companies not a part of this suit. Because such genuine issues of material fact remain, summary judgment in favor of the Appellants was properly denied. Inasmuch as the trial court did not address the damages issue in this case, any discussion of prejudgment interest and attorneys' fees at this point would be advisory only.

## CAMACHO'S ORIGINAL MOTION FOR CLASS CERTIFICATION

 Telles and Justice allege that the trial court abused its discretion in not granting Camacho's original effort to certify the El Paso County bail bondsmen as a class.[9] Camacho and Merrill did not undertake an interlocutory appeal of this issue pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(3)(Vernon 1997) nor did they raise the issue in the prior appeal. *See Camacho*, 831 S.W.2d at 805. Shortly after issuance of

the Supreme Court's opinion, Justice filed suit in a separate cause of action for return of the fees that had been collected. Likewise, following issuance of the Supreme Court's mandate, Telles d/b/a Raymond Telles Bail Bonds filed suit in a separate cause of action for return of the fees. Both suits were later consolidated into the original suit filed by Camacho and Merrill. Telles and Justice cite no authority to show that they have standing to challenge the trial court's decision to deny Camacho's motion for class certification, particularly at this late date, and we are aware of none. Further, since this issue was not raised in the original appeal by any of the parties entitled to raise it, and no party has attempted to raise the issue anew since judgment was rendered in favor of the original plaintiffs by the Supreme Court, we conclude that the trial court's ruling denying the class certification is final and unassailable.

## CONCLUSION

We affirm the summary judgment in favor of the County. As a result, we overrule the Camacho and Timmons groups' Point of Error No. One, Telles' and Justice's Point of Error No. One to the extent it attacks summary judgment in favor of the County, and the criminal defendants' Point of Error No. One. We affirm the summary judgment as to the Sheriff in his individual capacity, but reverse and render as to his official capacity. Accordingly, we sustain in part and overrule in part the Camacho and Timmons groups' Point of Error No. Two and Telles' and Justice's Point of Error No. One. Because we find genuine issues of material fact precluding summary judgment for Appellants, we overrule the Camacho and Timmons groups' Point of Error No. Three. We sustain the Camacho and Timmons groups' Point of Error No. Four and Telles' and Justice's Point of Error No. Two, and conclude that the trial court erred in denying Appellants' motion to strike the criminal defendants' intervention. Because of our ruling with regard to Point of Error No. Four, we do not reach Point of Error No. Five urged by the Camacho and

---

9. Camacho d/b/a Afuera Bail Bonds and Merrill d/b/a Merrill Bail Bonds moved for class certifi-

cation on July 26, 1988. The trial court denied class certification on June 14, 1989.

Timmons groups. This opinion does not address or adjudicate the merits of any potential claim of the criminal defendants against the bonding companies. Lastly, we overrule Telles' and Justice's Point of Error No. Three, challenging the denial of the original class certification sought by Camacho. We remand solely on the issue of the amount of the refund due Appellants within the parameters of this opinion.