## Bowman v. Commonwealth.

March 8, 1949.

Shumate & Shumate for appellant.

A. E. Funk, Attorney General and Zeb A. Stewart, Assistant Attorney General for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant, jointly indicted with Robert Couch, Jr., and Willie Kash on a charge of storehouse breaking, was tried separately, found guilty and penalty fixed at one year's imprisonment. On appeal it is contended that the judgment should be reversed because: (1) The court gave an erroneous instruction; (2) admitted incompetent evidence; (3) overruled a motion for a verdict of acquittal.

The offense charged was the breaking and entering of a variety store in Beattyville, and taking watches, clocks, rings and other articles to the claimed value of more than $1,000. The proprietor, Mr. Angel, testified

as to ownership, manner of breaking, the value of the stolen articles, a few of which he identified. A police officer testified that about 11:30 on the night of the burglary he was driving past the store and saw "three fellows" sitting on the front step of the store; he could not say who they were. The sheriff testified that he found an alarm clock and some empty boxes, either on or near some property owned by Bowman's father; these were identified by Mr. Angel. Couch, jointly indicted and introduced by the Commonwealth, testified that he and Bowman had been together "off and on" all of the night of the breaking. Kash got with them at some time, and later Bowman left them down near the railroad trestle and told them to wait for him; they waited some time and after about an hour went to Bowman's house, and after waiting there some time started down "that way" and met Bowman at the crossing "down back of the ten cent store." Bowman had a pasteboard box, which he opened and displayed a clock and some men's wrist watches. The watches were taken from the cases, and Couch destroyed them. He then related how they hid "the stuff." He says that later Bowman caught the train to a neighboring town, taking a cracker box which contained some watches, rings and jewelry. He fixed the time when they met Bowman after the store was broken into, between 11:00 and 12:30.

Imogene Charles, a girl who lived in Cincinnati, but formerly lived in Beattyville, said that Bowman was on a visit to his sister in Cincinnati for several days before Decoration Day; he was in her family's home several times during his stay. She and other members of the family went to Beattyville a day or two before Decoration Day, Bowman helping her brother to drive the truck. During Bowman's stay in Cincinnati she saw her brother with a gold wedding band and a diamond engagement ring marked "14 K. gold." She added "my brother told me that he got them from Ace." An objection was interposed at this point, and counsel for Bowman moved the court to exclude from the consideration of the jury "everything that the witness had testified to concerning the rings," the court overruling with exceptions.

Bowman denied that he robbed the store, or had anything to do with the robbery; that he had never had

any of the articles described by Mr. Angel in his possession. He denied that he "ran off" but admits his visit to Cincinnati, and said his return to Beattyville was voluntary.

Taking up the question of incompetent and prejudicial evidence, the girl's statement that her brother "told me that he got them from Ace," counsel for Commonwealth frankly admits that this was hearsay and incompetent. That it was so and prejudicial, there can be no doubt. Rose v. Com., 249 Ky. 103, 60 S.W.2d 374. However, counsel contends that since the motion was too general, that is, to exclude everything the witness had testified to about the rings, the court correctly overruled the motion, because some of her testimony concerning the rings was competent. We are of the opinion that the court should have excluded the hearsay testimony, and his failure to do so resulted in reversible error.

The objection to instruction No. 1 is of technical character. The chief objection is that it omitted the word "permanently" from that part of the sentence reading "with the felonious intention of depriving the owner thereof * * *." We shall not stop to enter into argument as to whether the omission constituted an error for which we would reverse. The instruction appears to follow one on the subject of storehouse breaking and stealing, approved by this court, and carried in Stanley's Instruction to Juries, Sec. 828, and which embraces the word "permanently," in the context. If there is another trial, and the case be submitted, the court should follow the language of instructions noted.

The chief argument of the Commonwealth is twofold: First, that under the proof Couch was not an accomplice; and second, if so there was sufficient evidence other than his to sustain the verdict. As we read the proof it is not difficult to conclude that Couch, according to his own evidence, brought himself within the definition: "An accomplice is one who participates in commission of a crime along with another as a principal, aider, abettor or accessory before the fact." Wilson v. Com., 255 Ky. 632, 75 S.W.2d 202. The question as to whether one is an accomplice where the evidence is such as to create a doubt, is a jury question, and in

this case was submitted. Whether that body concluded that Couch was or was not an accomplice, or determined guilt on the belief that there was ample evidence otherwise, tending to connect Bowman with commission of the offense, we have no way of knowing, but since the case is to be reversed on the ground of admission of incompetent evidence, we need not discuss the matter further.

We find it difficult to agree with the Commonwealth's contention that evidence other than that of Couch (excluding that of the Charles' Girl) was of sufficient probative value to take the case to the jury. It is pointed out that the "flight" of the defendant to Ohio, the possession of some of the stolen goods, and the fact the sheriff found some of the goods on Bowman's father's property, points clearly to Bowman's guilt.

As we read the testimony we find no substantial evidence of flight; the girl did not testify as to seeing Bowman with any of the "stolen articles," or jewelry. This leaves only the evidence that some of the articles were found on property owned by Bowman's father, and we would hesitate to hold that this was sufficient to fasten guilt on appellant.

The judgment is reversed for a new trial consistent with this opinion.