## Bowman v. Commonwealth.

November 11, 1949.

Shumate & Shumate for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE LATIMER—Reversing.

This is a second appeal as will be noted by reference to Bowman v. Com., 309 Ky. 611, 218 S. W. 2d 666. The second trial resulted in a verdict of guilty and punishment at two years' imprisonment. We reversed because of incompetent and prejudicial hearsay testimony of Imogene Charles, who testified on this trial but was not asked the same question as was propounded on the first trial. We also suggested a slight change in the instructions given and we note this was done.

We also held that Couch, who with Willie Kash, was indicted with Bowman, and who was the chief prosecuting witness, was an accomplice, and that eliminating his testimony and the incompetent testimony of the Charles girl, there was a lack of evidence tending to connect appellant with the offense charged.

On the last trial (after severance) Couch did not testify, but the Commonwealth introduced as the main witness Willie Kash. His testimony is substantially the same as was that of Couch on the first trial, except that he says Bowman and Couch robbed the store. He insisted that he took no part in the robbery, but was with the other two during the night the robbery occurred. He testified that they discussed the robbery of some store, but that he did not know it was to be Angel's

store; that he waited until they returned with a box filled with watches, rings and other articles, and that he then took part in hiding the stolen articles and joined them in hiding themselves for a short period.

The Commonwealth admits that if we were correct in holding Couch to have been an accomplice, the same is true to Kash, and we cannot escape the conclusion that he was such. However, it is insisted that there was ample evidence other than the testimony of Kash tending to connect appellant with the commission of the offense.

A review of the testimony shows in the main that it was about the same as on the former trial. On this trial the sheriff who had made an investigation following the robbery, testified as to finding some of the stolen property on or near the property of appellant's father, and that in his investigation he had found an iron bar in the back of the department store. There was no identification of this bar, nor was it shown that it was or might have been used in the breaking. The entry was made by breaking glass from the front door, "a hole large enough for a man to go through." The fact of finding the bar at the back of the store is without connection with the breaking.

On the first appeal it was argued, as it is now, that flight of the accused is a circumstance sufficient to tend to connect the fugitive with commission of the offense. On that trial it was shown by one or more witnesses that appellant boarded a train at St. Helens, a station near Beattyville; that he went to Cincinnati and remained for a week or ten days, and then returned with members of the Charles family to Beattyville. We indicated that this testimony was not "substantially evidence of flight."

On this trial the Commonwealth, perhaps to bolster the evidence of flight, introduced several witnesses who saw appellant carrying a sack, go towards St. Helens on the morning of his trip to Cincinnati; several others who saw him get on the train, and still others who talked to him on the train, one of whom said that appellant told him he was going to Cincinnati. Rather than showing the sort of "flight" which might be considered as a damaging circumstance, it shows that his departure was

fairly well advertised. It was shown on this trial, as on the last, that appellant visited with relatives and acquaintances a week or ten days after the date of the store breaking.

We are compelled to hold that we find no new sufficient substantial evidence to differentiate the result reached on the first appeal, hence the judgment must be reversed for a new trial.