TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00150-CV







Henry J. Novak, Appellant



v.



The M.D. Anderson Cancer Center; John Mendelsohn, M.D.;


and John Does Nos. 1 through 10, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-10851, HONORABLE ERNEST C. GARCIA, JUDGE PRESIDING







 Henry J. Novak ("Novak") appeals from a judgment dismissing, for want of
jurisdiction, his suit against the M.D. Anderson Cancer Center ("MDA"), John Mendelsohn
("Mendelsohn"), president of MDA, and ten other defendants identified only as "John Doe." We
will reverse the judgment in part, remanding that part of the cause to the trial court, and affirm
the remainder of the judgment.


NOVAK'S ORIGINAL PETITION


 Novak alleged that in January 1998, Mendelsohn and the John Doe defendants
schemed or conspired to defraud persons to whom they mailed a form letter soliciting money
contributions to MDA. (Novak received such a letter but sent no money in response to it.) The
letter contained the following statements which Novak alleged were false:

When it comes to cancer, the odds are in your favor! The fact is that well over
50% of people with cancer who are cared for at . . . M.D. Anderson Cancer
Center return home cured.


* * *



[W]ell over 50% of the cancer patients who come to us for help are cured.



 Mendelsohn and the John Doe defendants, according to Novak's allegations, knew
the foregoing representation of a fifty-percent cure rate was untrue, constituted a half-truth,
effectively concealed one or more material facts, or was made with reckless indifference for the
truth; and, Mendelsohn and the John Doe defendants intended thereby to induce the recipients of
the letter to send money to such defendants in reliance thereon.

 Novak alleged that the conduct of Mendelsohn and the John Doe defendants was
both unlawful and outside the course and scope of their employment as officers, directors, agents
representatives, and employees of MDA and the University of Texas System of which MDA is
a constituent part. Novak sued individually and as representative of a class of persons who
received the form letter. He did not allege that the State had consented to his suit in any manner.

 In addition to a prayer for general relief and for recovery of attorney's fees and
costs, Novak requested declaratory and injunctive relief as follows:

 1. a declaratory judgment that Mendelsohn and the John Doe defendants, while
acting under color of their employment at MDA, violated the prohibitions contained in title 18
United States Code sections 371 and 1341, together with a permanent injunction against their
"publishing, uttering, or publicly disseminating the fifty-percent cure rate representation through
the United States mail or in interstate commerce"; (1)

 2. a declaratory judgment that Mendelsohn (a physician) and any John Doe
defendant who was a physician, violated the prohibitions implicit in sections 3.08(4) and (6) of
the Texas Medical Practice Act, Texas Revised Civil Statutes Article 4495b; (2)

 3. a declaratory judgment that the conduct attributed to Mendelsohn and the John
Doe defendants lay outside the course and scope of their employment by MDA; and

 4. a declaratory judgment that the money had and received as a result of the
January 1998 letter was obtained by false and fraudulent means and was not the lawful property
of MDA, the University of Texas System, or the State of Texas, together with an injunction
compelling Mendelsohn, in his capacity as president of MDA, to return such money to those who
had contributed it.



 MDA'S ORIGINAL ANSWER


 MDA answered in the cause by filing a general denial. Although served with
citation, according to the appellate record, Mendelsohn did not file an answer. Nothing in the
appellate record indicates that any John Doe defendant has been identified and served with
citation. The common-law defense of official immunity has not been pleaded in the case. See
Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex. 1994).


MOTION TO DISMISS FOR WANT OF JURISDICTION


 Although he did not file an answer, Mendelsohn appeared generally in the cause
by joining MDA in a motion to dismiss Novak's suit for want of subject-matter jurisdiction. 
Therein they alleged as follows: 

 1. Novak's suit was barred by the doctrine of sovereign immunity;

 2. Novak lacked standing to maintain a cause of action for common-law fraud
because he did not himself send money in reliance on the January 1998 letter; and

 3. Novak lacked standing to maintain a cause of action based on title 18 United
States Code sections 371 and 1341 and sections 308(4) and (6) of article 4495b because these
criminal and regulatory statutes do not authorize a private cause of action for their violation.


THE JUDGMENT OF DISMISSAL


 Novak appeals from a trial-court order that declares simply that the court
considered the "Defendant's Motion to Dismiss for Lack of Jurisdiction," found the motion
"meritorious," and dismissed Novak's suit, purportedly "with prejudice." (Because the merits
of Novak's actions were not considered, for want of jurisdiction to do so, the words "with
prejudice" are without legal effect.)


DISCUSSION AND HOLDINGS


 On appeal from the judgment of dismissal, we are obliged to take as true the
allegations in Novak's petition and construe them favorably to his position. See Texas Ass'n of
Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).

 Novak contends the dismissal order "was contrary to well-settled Texas case law
applicable to suits to enjoin wrongful conduct of state officials." He argues as follows: (1)
unlawful conduct by state officials is not protected by the sovereign-immunity doctrine; (2) the
doctrine does not bar a suit to compel a state agency or department to return to the rightful owner
money illegally obtained; and (3) the fact that Novak did not send money to MDA in reliance on
the January 1998 letter does not deprive him of standing because he was a "target" of the unlawful
scheme or conspiracy to defraud.


Novak's action for declaratory relief and permanent injunction

 Novak sued to obtain a declaratory judgment that the conduct attributed to
Mendelsohn and the John Doe defendants was unauthorized and wrongful for the reasons
mentioned above, and to obtain a permanent injunction against their publishing or disseminating
the fifty-percent cure rate in the future. He did not allege, however, that the defendants were
attempting or threatening to do so. Consequently, his cause of action in this respect required a
judicial decision in a hypothetical or abstract case, that is to say, an advisory opinion lying outside
the trial court's jurisdiction. See Texas Ass'n of Bus., 852 S.W.2d at 444; Andrews v. Smith, 93
S.W.2d 493, 495 (Tex. Civ. App.--Austin 1936, writ ref'd). The trial court therefore did not err
in dismissing this cause of action as to the alleged class and as to Novak individually.


Novak's action for declaratory relief and mandatory injunction

 Novak sued to obtain a declaratory judgment that the conduct attributed to
Mendelsohn and the John Doe defendants was unauthorized and wrongful for the reasons
mentioned above, and to obtain a mandatory injunction compelling Mendelsohn to return to the
owners money had and received as a result of the January 1998 letter.

 It is well settled that "absent the State's consent to suit, a trial court lacks
jurisdiction." Texas Dep't of Transp. v. Jones, 43 Tex. Sup. Ct. J. 143, 144 (Dec. 2, 1999). 
However,


[t]he acts of officials which are not lawfully authorized are not acts of the State,
and an action against the officials by one whose rights have been invaded or
violated by such acts, for the determination and protection of his rights, is not a
suit against the State within the rule of immunity of the State from suit.



Cobb v. Harrington, 190 S.W.2d 709, 712 (Tex. 1945) (emphasis added). "A state official's
illegal or unauthorized actions are not acts of the State." Federal Sign v. Texas S. Univ., 951
S.W.2d 401, 404 (Tex. 1997). Consequently, a private litigant does not need legislative consent
to sue the State for declaratory and injunctive relief to determine and protect his rights, as opposed
to an action to recover money damages based on the illegal or unauthorized actions of a state
official. See id.; see, e.g., Director of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of
Tex., 600 S.W.2d 264, 265-66 (Tex. 1980); Texas Highway Comm'n v. Texas Ass'n of Steel
Importers, Inc., 372 S.W.2d 525, 530 (Tex. 1963); Cobb, 190 S.W.2d at 712.

 Applying these precepts, we hold the sovereign immunity doctrine did not bar an 
action for declaratory judgment that the conduct of Mendelsohn and the John Doe defendants was
unauthorized or illegal because fraudulent, as Novak alleged, nor an action to declare that the
money derived from such conduct was not lawfully State property. We do not, of course, purport
to speak to the merits of Novak's allegations, which we must take as true on appeal from the
dismissal order. 

 Whether Novak may also obtain the requested mandatory injunction, based on the
conduct alleged, is more complicated. It is well-settled that one who "pays an illegal tax under
duress has a legal claim for its repayment," even against the State, based on the principle that "the
money never becomes the property of the State as against the real owner"; however, one "who
voluntarily pays an illegal tax has no claim for its repayment." Austin Nat'l Bank v. Sheppard,
71 S.W.2d 242, 245-46 (Tex. 1934). These rules extend as well to taxes collected by fraud or
mutual mistake of fact, in addition to those collected by express or implied duress, sometimes
denominated "business compulsion." See Salvaggio v. Houston Indep. Sch. Dist., 709 S.W.2d
306, 308 (Tex. App.--Houston [14th Dist.] 1986, writ dism'd w.o.j.). In addition to taxes so paid,
various fees collected by government have been held to come within the rules. See, e.g., Kubosh
v. City of Houston, 2 S.W.3d 463, 468-69 (Tex. App.--Houston [1st Dist.] 1999, no pet.);
Camacho & Timmons v. Samaniego, 954 S.W.2d 811, 822 (Tex. App.--El Paso 1997, no writ);
Merrill v. Carpenter, 867 S.W.2d 65, 68 (Tex. App.--Fort Worth 1993, writ denied). The
defendants have not suggested any reason why the nature of the sums collected by them in this
instance requires different rules, and we can think of none. Indeed, any different rules would
seem to be contrary to the basic principle underlying the rules, which is that money obtained by
public officials through duress, mutual mistake, or fraud "never becomes the property of the State
as against the real owner." Austin Nat'l Bank, 71 S.W.2d at 246. This does not, however, settle
the matter.

 Novak sued in his individual capacity and as representative of a class of persons
defined as those who received the fund-raising letter of January 1998. See Tex. R. Civ. P. 42(a),
(b). That is to say, he did not distinguish between those who paid money in reliance on the letter
and those who did not. Because Novak sued for a mandatory injunction compelling a return of
money to which the State has no lawful claim, the very nature of the relief requested precludes
such injunctive relief as to Novak in his individual capacity and as to that category of persons who
did not pay money in reliance on the letter. In this respect, their status is indistinguishable from
that of the public at large, which suffered no injury in fact by reason of the letter. Consequently,
they lack standing to maintain such an action. See Blum v. Lanier, 997 S.W.2d 259, 261-62 (Tex.
1999); Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984).

 Concerning the category of persons who did part with their money in reliance on
the January 1998 letter, sovereign immunity does not bar their claim for the reasons given
previously and they do have standing to maintain an action for declaratory relief and for a
mandatory injunction compelling Mendelsohn to return their money. The fact that Novak did not
personally pay money in reliance on the letter may be a relevant factor in judging whether he
should properly represent the class; it does not in and of itself disqualify him from acting as
representative and does not necessarily preclude the certification of a class. See Salvaggio, 709
S.W.2d at 307-11. And at this point in the litigation, Novak has not been denied his claim to
represent a class. We hold, therefore, that the trial court erred in dismissing the suit for
declaratory relief and for a mandatory injunction requiring a return of money, not lawfully owned
by the State, to those who are the lawful owners. (3)

 It is readily apparent that the voluntary payment rule may prove an insurmountable
barrier to the certification of such a class, owing to the case-by-case determination required in
actions of this kind. See Salvaggio, 709 S.W.2d at 307-11. That is not an issue in the present
appeal. Like all matters pertaining to class-action certification, it is a matter for the trial court
to decide initially and that court has not yet done so. We note that Rule 42(c) requires that such
issues be determined as soon as practicable after commencement of an action. See Tex. R. Civ.
P. 42(c).

 For the reasons given, we reverse the trial-court judgment insofar as it dismisses
for want of jurisdiction Novak's suit on behalf of a class of persons who paid money in reliance
upon the allegedly fraudulent statement contained in the letter of January 1998, and the claims of
such class members for declaratory and injunctive relief requiring a return of their money. We
remand to the trial court that cause of action for proceedings not inconsistent with our opinion.
We affirm the remainder of the judgment.



 

 John E. Powers, Justice

Before Justices Jones, Kidd and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: March 9, 2000

Do Not Publish Released for publication June 29, 2001. Tex. R. App. P. 47.3(c).














* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Section 371 authorizes a fine and imprisonment for conspiring to commit any offense
against the United States; section 1341 authorizes a fine and imprisonment for using the mail to
obtain "money or property by means of false or fraudulent pretenses, representations, or
promises." See 18 U.S.C.A. §§ 371, 1341 (West Supp. 1999).
2. Former article 4495b comprised the Texas Medical Practice Act which has since been
codified as sections 151.001-165.060 of the Texas Occupations Code (West 2000). Former
section 3.08 of the Act authorized the Texas State Board of Medical Examiners to take
disciplinary action against a physician for "unprofessional or dishonorable conduct that is likely
to deceive or defraud the public or injure the public" or for the physician's "use of any advertising
statement that is false, misleading, or deceptive." See Medical Practice Act, 73d Leg., R.S., ch.
862, § 17, 1993 Tex. Gen. Laws 3374, 3386 (Tex. Rev. Civ. Stat. Ann. art. 4495b, § 3.08(4),
(6), since repealed and codified at Tex. Occupations Code Ann. §§ 164.051, .052(a)(5), (6) (West
2000)).
3. Passages found in appellees' brief argue the merits of the case or the question of class-action certification, for example: (1) the claim of a fifty-percent rate of cure was in fact true in
a certain sense; (2) "[t]here is no evidence of any attempt to defraud, any conspiracy to defraud,
or any threat of injury to" appellant personally; and (3) Novak "has not shown that any other
person's contribution was based on the allegedly false representation."


 Appellees did not plead that Novak's allegations were made in bad faith and that issue
was not, of course, considered by the trial court. The appeal is taken from the trial court's
judgment on appellee's motion to dismiss, considered as a plea to the jurisdiction. For the
purpose of testing jurisdiction, the trial court (and we) must accept as true the plaintiff's
allegations and his good faith in making them cannot be questioned by a plea in bar, such as a plea
to the jurisdiction. If a defendant contends the plaintiff's allegations are made in bad faith, he
must establish that conclusion before his plea to the jurisdiction may be heard. See Brannon v.
Pacific Employers Ins. Co., 224 S.W.2d 446, 469 (Tex. 1949); Jud v. City of San Antonio, 184
S.W.2d 821, 822-23 (Tex. 1945). We therefore assume Novak's allegations are true and made
in good faith in testing the appellees' plea to the jurisdiction.