DALLAS COUNTY COMMUNITY
COLLEGE DISTRICT, et al.,
Appellants,

v.

William H. BOLTON, II,
et al., Appellees.

No. 05–01–00116–CV.

Court of Appeals of Texas,
Dallas.

Oct. 17, 2002.

P. Michael Jung, Strasburger & Price, L.L.P., Dallas, Bruce A. Griggs, Locke, Liddell & Sapp, Austin, for appellants.

Roger L. Mandel, Stanley, Mandel & Iola, P.C., Dallas, for appellees.

Before Justices KINKEADE, WRIGHT, and FITZGERALD.

## OPINION ON MOTION FOR REHEARING

Opinion By Justice WRIGHT.

We deny the motion for rehearing filed by Dallas County Community College District, the Chancellor of the District, and the members of the board of trustees in their official capacities (collectively referred to as the "District"). We deny the motion for rehearing filed by William H. Bolton, II, Helen Bolton, Bruce Albright, Jason Grimes, and Daniel Martinez, individually and on behalf of a certified class, (the "Class"). We withdraw our opinion of August 15, 2002 and vacate our judgment of that date. This is now the opinion of the Court.

The District appeals the trial court's judgment in this class action lawsuit. The Class sued the District for declaratory relief, damages, and attorney's fees arising out of claims that the District illegally collected certain student fees. The trial court rendered two partial summary judgments. After trial of the remaining issues, the trial court rendered its final judgment.

The District contends: (1) this Court lacks jurisdiction of this appeal; (2) the trial court erred in granting summary judgment that the technology fee and the increase in the student services fee were unlawful; (3) the trial court committed charge error; (4) the trial court erred in granting summary judgment that the Class paid the challenged fees under duress; (5) the trial court erred in ruling that the Class's claims were not barred by sov-

ereign immunity; (6) the trial court erred in applying the four-year statute of limitations; (7) the trial court erred in granting a lump-sum recovery; and (8) the trial court erred in its calculation of prejudgment interest and award of attorney's fees. We affirm in part, reform in part, and reverse and remand in part.

The Class filed a cross-appeal challenging the trial court's ruling that a fee increase is proper at any campus in a multicampus district where the majority of that campus's student government approves the increase. We overrule the Class's sole issue on cross-appeal.

## BACKGROUND

The District is comprised of seven junior colleges: (1) Brookhaven; (2) Cedar Valley; (3) Eastfield; (4) El Centro; (5) Mountain View; (6) North Lake; and (7) Richland. The president of each college reports to the Chancellor of the District. The District is administered by an elected seven-member Board of Trustees.

The District has always collected a student services fee from its students. This fee is used for extra-curricular activities. Prior to the fall 1997 semester, the student services fee was $10 per student per semester.

In 1994, Bruce Albright was a member of the student government at Richland. He sought to increase the student services fee to $15. He took his proposal to Stephen Mittelstet, the president of Richland. Mittelstet said he would agree to the increase only if the other colleges agreed it was necessary. The Richland Student Advisory Council voted in favor of the increase.

Mittelstet presented the fee increase proposal to the Chancellor's cabinet. The cabinet was concerned that the flat fee increase penalized seventy percent of the student population that attended part-time. It favored a sliding scale student services fee of $2 per semester hour with a minimum of $10.

Mountain View approved an increase in the student services fee. There was disagreement, however, as to the form of that increase. Eastfield voted in favor of a sliding scale fee of $2 per semester hour with a minimum fee of $10 and a maximum fee of $40. North Lake voted to increase the student services fee with a flat fee at a range of $8 and $10. On February 4, 1997, the Board of Trustees approved a sliding scale student services fee of $2 per semester hour with a $10 minimum.

In addition to the student services fee, the District also collected a technology fee. The District has collected the technology fee since 1993. The technology fee is used to purchase technology equipment for the students' use as part of their academic instruction.

Five students in the District filed suit claiming that the technology fee was unauthorized by law and the increase in the student services fee violated section 54.503(f) of the education code. The trial court rendered two summary judgments. In the first summary judgment, the trial court found that the technology fee was not authorized by law and that Brookhaven, Cedar Valley, El Centro, and North Lake did not approve the increase in the student services fee for students taking six or more hours. In the second summary judgment, the trial court found that the Class established duress as a matter of law, the four-year statute of limitations applied, and attorney's fees were recoverable.

The remaining issues were tried before a jury. The jury found that the student governments at Richland and Mountain View had not approved the increase in the student services fee. The trial court en-

tered final judgment on November 30, 2000. The trial court declared that both the charging of the technology fee and the increase in the student services fee were illegal. The court ordered the Class to recover $13,575, 487 for reimbursement for the technology fees. The court also awarded the Class, except Eastfield Class members, $1,469, 262.30 as reimbursement for the increased amount of the student services fee. The Eastfield Class members were excluded from the award for reimbursement for the increase in the student services fee because the parties stipulated that the Eastfield student government complied with the statutory requirement of approving the exact increase implemented. The court also awarded the Class its attorney's fees. The court also made provisions to handle the funds remaining from class members who could not be located. This appeal timely followed.

## JURISDICTION

■ At the outset, the District asserts that this Court lacks jurisdiction because the judgment is interlocutory. Specifically, the District asserts the judgment is interlocutory because it leaves matters to be determined following distribution of the award to the Class members.[1]

■ As a general rule, an appeal may be taken only from a final judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). To be final, a judgment must dispose of all parties and all claims except as necessary to carry out the judgment. *Id.* A judgment rendered after a conventional trial on the merits is presumed to be final. *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966). A judgment disposing of all issues between the parties is not rendered interlocutory even though the judgment provides for further proceedings incidental

1. The District asserts that the following three paragraphs in the judgment render it interlocutory:

> After distribution of all individual Class members' recoveries reasonably possible, Class Counsel shall be entitled to recover from any remaining funds not deliverable to Class members their reasonable attorneys' fees (on an hourly basis) and reasonable out-of-pocket expenses incurred in collecting upon the final judgment, calculating individual Class members' recoveries and distributing such recoveries. Class Counsel must file a written motion with the Court seeking approval of the amounts of attorneys' fees and expenses, which motion shall be served by Class Counsel on counsel for Defendants and on the Class Representatives.
>
> If the funds remaining after distribution of all individual Class members' recoveries reasonably possible are not sufficient to reimburse Class Counsel for all of their Court-approved attorneys' fees (on an hourly basis) and out-of-pocket expenses incurred in collection upon the final judgment, calculating individual Class members' recoveries and distributing such re-

> coveries, Defendants shall pay such excess amount to Class Counsel within five (5) business days after entry of the order by the Court approving Class Counsel's fees and expenses.
>
> If the funds not deliverable to members of the Class despite reasonable efforts to do so by Class Counsel are not exhausted by deduction of Class Counsel's reasonable attorneys' fees and expenses incurred in collecting upon the final judgment, calculating individual Class members' recoveries and distributing such recoveries, Class Counsel shall deposit any remaining funds into the registry of the Court. At that time, the Court shall consider the following options for disposition of such funds: (a) cy pres distribution, (b) handling pursuant to Chapters 72 and 74 of the Texas Property Code, (3)[sic] pro rata distribution of the funds to the located Class members, or (4)[sic] reversion to Defendants. Defendants and Plaintiffs are both invited to file proposals with the Court for the disposition of any such funds, which proposals must be filed within ten (10) days after the date such funds are paid into the registry of the Court by Class Counsel.

to its execution. *Beavers v. Beavers,* 651 S.W.2d 52, 54 (Tex.App.-Dallas 1983, no writ); *Medical Adm'rs, Inc. v. Koger Properties, Inc.,* 668 S.W.2d 719, 722 (Tex. App.-Houston [1st Dist.] 1983, no writ). In *Medical Administrators,* the court held that a judgment was final despite the reservation of jurisdiction to consider additional attorney's fees incurred in execution and collection of the judgment. *Medical Administrators,* 668 S.W.2d at 722.

The Class relies on *Hargrove v. Insurance Investment Corp.,* 142 Tex. 111, 176 S.W.2d 744 (1944). In *Hargrove,* the supreme court held that a judgment was final even though it provided for payment of the proceeds from a foreclosure upon stock certificates into the registry of the trial court for later disposition. *Hargrove,* 176 S.W.2d at 746–47, 142 Tex. at 117. The District asserts *Hargrove* is inapplicable because the trial court did not reserve a question as to the opposing party's rights and the amount adjudged remained the same. In this case, the District asserts, the judgment reserves to the trial court the right to alter the amount adjudged. Thus, the District argues, if the trial court orders that the undistributed funds revert to the District, the amount adjudged against the District would change. We disagree. The trial court ordered the District liable for all of the student fees it illegally collected. The trial court adjudged an amount of money based on the District's records. The trial court recognized, however, that Class counsel would not be able to locate all of the Class members and thus, some money would be left for distribution. The amount of money left over would not be known until the judgment was executed. Accordingly, the judgment provided for the distribution of the remaining money.

The Class also relies on *Gani v. Gani,* 495 S.W.2d 576 (Tex.1973). In *Gani,* a child custody case, the trial court reserved the right to (1) order the exact hour and dates of visitation if the parties could not agree and (2) reconsider the petition if it received a report detrimental to the best interests of the child. In holding that the trial court's judgment was final, the supreme court noted that the trial court had not reserved judgment on any aspect of the case then before it. *Gani,* 495 S.W.2d at 578. Rather, it "contemplated possible further action of the court upon a showing of conditions different from those existing at the time of the judgment." *Id.* The District contends Class counsel's inability to locate some Class members is not a condition different from those existing at the time of judgment. We disagree. At the time of judgment, the trial court awarded a lump sum based on all Class members. A reduced class membership is a condition different from that existing at the time of judgment. We conclude the provision reserving for later determination the disposal of undistributed funds did not render the judgment interlocutory.

The provision allowing Class counsel to recover their fees incurred in connection with post-judgment collection and distribution efforts does not render the judgment interlocutory. Although the trial court will have to determine the reasonableness of the fee, the award is incidental to enforcement of the judgment. *See Beavers,* 651 S.W.2d at 54; *Medical Adm'rs,* 668 S.W.2d at 722. Accordingly, we overrule the District's first issue.

### THE SUMMARY JUDGMENTS

### STANDARD OF REVIEW

The standard for reviewing a summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A party moving for summary judgment has the burden of showing no genuine issue of material fact

exists and it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *See Kang v. Hyundai Corp.,* 992 S.W.2d 499, 501 (Tex. App.-Dallas 1999, no pet.).

When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the propriety of both judgments. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). We determine all questions presented and render such judgment as the trial court should have rendered. *Id.*

### TECHNOLOGY FEE

In its second issue, the District asserts the trial court erred in declaring that collection of the technology fee was illegal. The District asserts the technology fee required no statutory authorization. Alternatively, the District asserts that sections 130.123(c) and 54.504 of the education code authorized the technology fee. The Class counters that statutory authorization was necessary, that the District failed to comply with the requirements of section 130.123, and that section 54.504 does not apply.

#### 1. Necessity of Authorization

■ Chapter 54 of the education code concerns tuition and fees. Institutions of higher education may collect tuition and fees only as permitted by law. TEX. EDUC. CODE ANN. § 54.003 (Vernon 1996). Section 54.002 limits the application of chapter 54 to junior colleges "to the extent provided by Section 130.003(b) of this code." TEX. EDUC.CODE ANN. § 54.002 (Vernon 1996). In turn, section 130.003(b) requires that public junior colleges must collect matriculation and other fees as required by law in order to be eligible for state funds. TEX. EDUC.CODE ANN. § 130.003(b) (Vernon Supp.2002). Essentially, the District argues that it is not bound by chapter 54 and that it may impose any fee it wants at the risk of becoming ineligible for state funds.

We disagree that chapter 54 does not apply to public junior colleges. Certain sections of chapter 54 specifically address public junior colleges. *See* TEX. EDUC.CODE ANN. § 54.051 & 54.203 (Vernon Supp. 2002) (guidelines for tuition rates and exemptions from tuition). The Attorney General has opined that section 54.003 does apply to junior colleges. *See* Op. Tex. Att'y Gen. No. MW–546 (1982). We conclude that public junior colleges are bound by the requirement that all tuition and fees charged must be permitted by law. Thus, the technology fee must have statutory authorization.

#### 2. Section 130.123

■ The District asserts that the technology fee is authorized by section 130.123. The Class counters that although this section could provide authority for the technology fee, the District failed to follow the required procedures for authorization. We construe statutes as written and, where possible, determine the legislature's intent from the statute's language. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). We consider a statute as a whole, not its provisions in isolation. *Continental Cas. Co. v. Downs,* 81 S.W.3d 803, 805 (Tex.2002). We also consider the consequences that would follow from each proposed construction. *Atascosa County v. Atascosa County Appraisal Dist.,* 990 S.W.2d 255, 258 (Tex. 1999). Only in the context of the entire statute can the true meaning of a single provision be made clear. *Bridge-*

*stone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133 (Tex.1994).

Chapter 130 of the education code specifically addresses public junior college districts. The District relies on section 130.123(c) as authorization for the technology fee. Section 130.123 provides, in pertinent part,:

(b) For the purpose of carrying out any one or more of the aforesaid powers each board shall be authorized to issue its revenue bonds to be payable from and secured by liens on and pledges of all or any part of any of the revenues from any rentals, rates, charges, fees, or other resources of such board, in the manner hereinafter provided ....

(c) Each board shall be authorized to fix and collect rentals, rates, charges, and/or fees, including student union fees, from students and others for the occupancy, use and/or availability of all or any of its property, buildings, structures, activities, operations, or facilities, of any nature, in such amounts and in such manner as may be determined by such board.

(d) Each board shall be authorized to pledge all or any part of any of its revenues from any of the aforesaid rentals, rates, charges, and/or fees to the payment of any bonds issued hereunder, including the payment of principal, interest, and any other amounts required or permitted in connection with said bonds. When any of the revenues from any such rentals, rates, charges, and/or fees are pledged to the payment of bonds, they shall be fixed and collected in such amounts as will be at least sufficient, together with any other pledged resources, to provide for all payments of principal, interest, and any other amounts required in connection with said bonds, and, to the extent required by the resolution or order authorizing the issuance of said bonds, to provide for the payment of operation, maintenance, and other expenses ....

\* \* \*

(g) All bonds permitted to be issued under this section, and the appropriate proceedings authorizing their issuance, shall be submitted to the Attorney General of the State of Texas for examination. If he finds that such bonds have been authorized in accordance with law he shall approve them, and thereupon they shall be registered by the Comptroller of Public Accounts of the State of Texas; and after such approval and registration such bonds shall be incontestable in any court, or other forum, for any reason, and shall be valid and binding obligations in accordance with their terms for all purposes.

TEX. EDUC.CODE ANN. § 130.123(b), (c), (d) & (g) (Vernon Supp.2002). All parties agree that section 130.123(c) covers the technology fee. They disagree on whether the District followed the proper procedure, if any, to obtain that authorization. The Class asserts that section 130.123 requires that the fee be pledged, at least in part, to the payment of revenue bonds. The District vehemently disagrees.

The District points out that the term "shall be authorized" is used throughout section 130.123. This language, the District argues, confirms that the pledging of the technology fee to the payment of revenue bonds is purely discretionary. For this reason, the District asserts, it was not necessary for the fee to be enacted pursuant to a resolution. Reading section 130.123 in isolation, the District's argument is plausible. However, read in the context of all of subchapter G, the District's argument is not plausible.

Subchapter G of chapter 130 is entitled Fiscal Provisions. Within this subchapter,

the legislature sets forth three alternative methods for payment of construction of buildings or purchase of equipment. First, a junior college district may issue negotiable coupon bonds for the construction and equipment of school buildings with ad valorem taxes used to pay those bonds. TEX. EDUC.CODE ANN. § 130.122(a) (Vernon 1991). The board of the junior college district must authorize the issuance of negotiable coupon bonds through either an order or a resolution. *Id.* Moreover, the bonds must be approved by a majority of the electors. TEX. EDUC.CODE ANN. § 130.122(b) (Vernon 1991). Second, a junior college district may issue revenue bonds and impose usage fees to pay those bonds. TEX. EDUC.CODE ANN. § 130.123(b) (Vernon Supp.2002). Finally, a junior college board may issue revenue obligations pursuant to an order or resolution. TEX. EDUC.CODE ANN. § 130.125(b) & (c) (Vernon Supp.2002).

The Class construes section 130.123, not in isolation, but in the context of the entire chapter. According to the Class's construction, a junior college district may finance the construction of new buildings and its facilities by imposing a fee for their usage. If a junior college district chooses this financing path, it must follow certain procedures. First, at least a portion of the fee must be pledged to the payment of revenue bonds. Second, the amount pledged must be set forth in the resolution authorizing the revenue bonds. Third, the resolution must be approved by the attorney general. Similar procedures are also required for the other two financing options mentioned earlier. *See* TEX. EDUC. CODE ANN. § 130.122 & 130.125 (Vernon 1991 & Supp.2002). Construing section 130.123 in this manner eliminates the Dis-

trict's ability to impose virtually any fee it can imagine.

If we follow the District's construction of section 130.123, a junior college district could conceivably impose any fee for the use of its facilities. If the District chose not to pledge such fee to the payment of revenue bonds, no resolution authorizing the fee would be necessary. Further, the fee would not be subject to approval by the attorney general. If this is true, the Class argues, the District could charge a $100 fee for use of pencil sharpeners. The District offers a two-part response to the Class's argument. First, the courts may set aside decisions of a junior college district board. This assertion, however, conflicts with the District's argument that the technology fee is incontestable under 130.123(g). Nearly four years after it enacted the technology fee, the District pledged it to the payment of revenue bonds. In approving the revenue bonds, however, the Attorney General did not have the opportunity to review and assess the validity of the technology fee. Accordingly, we find no merit in the District's argument that the Class cannot contest the validity of the technology fee. Second, because trustees of junior college districts are elected, the District argues a trustee who voted for a $100 fee for use of pencil sharpeners would soon be out of office.[2]

We conclude that through its enactment of chapter 130, the legislature set forth an orderly procedure to safeguard against the imposition of frivolous fees. If the District were free to impose whatever fees it chose at the risk of losing state funds, there would be no need for a chapter concerning fiscal provisions. What would be the point of setting forth guidelines to obtain approval from the Attorney General when

---

**2.** We note that trustees of public junior colleges serve six-year terms. TEX. EDUC CODE ANN. § 130.082(e) (Vernon Supp.2002).

such approval is not necessary? We note that this section was originally enacted in 1949. The legislature's purpose in enacting the legislation was to authorize junior colleges "to issue *self-liquidating* bonds for the purpose of constructing and equipping dormitories, cottages or stadiums." Act of June 29, 1949, 51st Leg., R.S., ch. 502, § 10, 1949 Tex. Gen. Laws 927, 928 (emphasis added).

A broader view of the education code supports the Class's construction of section 130.123. Chapter 54 sets forth specific tuition guidelines specifically applicable to public junior colleges and senior colleges alike. Chapter 55 contains the fiscal provisions for senior colleges. The Attorney General issued an opinion stating that chapter 54's tuition requirements applied to section 55.17. Op. Tex. Att'y Gen. No. H–37 (1973). Former section 55.17 is very similar to section 130.123. The Attorney General noted that section 55.17 "dealt with bonds and their retirement with funds raised by fees." Op. No. H–37 at 151. The Attorney General opined that the exemptions contained in section 54.203 applied to fees enacted pursuant to section 55.17. Op. No. H–37 at 150.

The District's construction of section 130.123 leads to a conflict with certain sections of chapter 54 that specifically apply to junior colleges. On the other hand, the Class's construction of section 130.123 is not in conflict with the mandates of chapter 54. We conclude the trial court properly granted summary judgment that the technology fee was illegal because the District failed to enact it pursuant to the required procedures of section 130.123.

### 3. Section 54.504

We turn now to the District's assertion that the technology fee is authorized by section 54.504. That section permits institutions of higher education to charge "incidental fees." As set forth below, "incidental fees" are defined only by way of example:

(c) In this section, "incidental fees" includes, without limitation, such fees as late registration fees, library fines, microfilming fees, thesis or doctoral manuscript reproduction or filing fees, bad check charges, application processing fees, and laboratory breakage charges, but does not include a fee for which a governing board makes a charge under the authority of any other provision of law.

TEX. EDUC.CODE ANN. § 54.504(c) (Vernon 1996). The District submitted this very issue to the Attorney General of the State of Texas. After reviewing the legislative history of section 54.504, the Attorney General concluded incidental fees are assessed only upon a certain action or inaction on the part of a particular student. Op. Tex. Att'y Gen. No. DM–450 (1997). All the fees listed in subsection (c) share this characteristic. An across-the-board technology fee does not. We agree with the Attorney General's reasoning and hold that section 54.504(c) does not authorize the technology fee. We overrule the District's second issue.

### STUDENT SERVICES FEE

In its third issue, the District complains of the trial court's disposition of the student services fee. The District asserts the trial court erred in declaring the increase in the student services fee illegal at all campuses except Eastfield. The court found that the campuses had not complied with the statutory requirement that an increase in the student services fee be approved by a majority vote of the students or student government. With respect to El Centro, Brookhaven, North Lake, and Cedar Valley, the court granted summary judgment on this issue. The

legality of the student services fee increase at Mountain View and Richland was tried to a jury. The jury found that those two campuses had not complied with the statutory requirement.

### 1. El Centro, Brookhaven, North Lake, and Cedar Valley

The District asserts the Class did not meet its summary judgment burden because it failed to show that El Centro, Brookhaven, North Lake, and Cedar Valley had not approved the fee increase. The Class alleged in its petition that the increase in the student services fee was illegal because it was not authorized by the Texas Education Code. The Class sought summary judgment on this issue on the ground that the student governments at these colleges had not approved the increase. To support its motion, the Class relied upon the deposition of District Representative Robert J. Young, interrogatory responses, admissions, and other evidence. Admissions and interrogatory responses may support a motion for summary judgment. TEX.R. CIV. P. 166a(c).

During the period of time that the contested student services fees were collected section 54.503 required approval of a fee increase as follows:

> (f) If, in an academic year, the total compulsory fee charged under this section is more than 10 percent higher than the compulsory fee charged for the previous academic year, the increase does not take effect unless the increase is approved by a majority vote of the students voting in an election held for that purpose or by a majority vote of the student government at the institution.

Act of June 16, 1991, 72nd Leg., R.S., ch. 844, 1991 Tex. Gen. Laws 2912, 2913, (amended 2001) (current version at TEX. EDUC.CODE ANN. § 54.503(f) (Vernon Supp. 2002)). The summary judgment evidence showed the student governments at El Centro and Brookhaven did not vote on the fee increase. This evidence is in the form of the District's response to an interrogatory requesting descriptions of all votes taken by student governments at the colleges on the fee increase. The District addressed all campuses except El Centro and Brookhaven. In his deposition, Young acknowledged the District's position that four or five of the campuses voted for the increase in the student services fee.

Through discovery, the Class asked the District to produce all documents supporting approval of the fee increase by the student governments at each of the campuses. With respect to North Lake, the District produced two documents. The first was a memo from a former student government president, David Kellum. Kellum stated that in November, 1996, the student government's executive board voted on a fee increase generally but reserved for later vote the specific manner of increase. The second document is a letter from David Robison representing the international honor society at North Lake. Robison said that several of the society's officers believed that an increase in student fees was preferable to an increase in tuition. These documents confirm that the student government at North Lake did not approve the sliding scale fee increase. In fact, the board reserved that decision for later. Thus, the Class's summary judgment evidence established that North Lake's student government did not approve the sliding scale fee increase. The District attached and affidavit from Kellum to its summary judgment response. Kellum stated that in November 1996, the majority of the student government voted to increase the student services fee pursuant to a flat fee method. Kellum's affidavit does not, however, raise a fact question

on whether North Lake approved the sliding scale fee increase.

With respect to Cedar Valley, the Class again relied on Young's deposition testimony. He testified as to a conversation between his paralegal, Dave Hay, and the president of Cedar Valley, Carol Spencer. According to Young, Spencer told Hay that the "students at Cedar Valley College had approved the sliding scale student activity fee." The Class asserts this statement is inadmissible hearsay and constitutes no evidence that the student government at Cedar Valley approved the sliding scale fee increase. The District did not present any summary judgment evidence with respect to Cedar Valley. The Class's summary judgment evidence shows that Cedar Valley did not approve the sliding scale fee increase and the District did not present any evidence raising a fact question on this issue.

We conclude the Class's summary judgment evidence established that the student governments at El Centro, Brookhaven, North Lake and Cedar Valley did not approve the sliding scale fee increase in the student services fee.

### 2. Richland and Mountain View

As mentioned earlier, the legality of the increase in the student services fee at Richland and Mountain View was tried to a jury. The District contends the trial court erred in its charge to the jury. Specifically, the District asserts the jury question erroneously required the jury to find that the specific form of increase actually implemented must have been approved. The District asserts that the statute requires only that an increase be approved.

The standard of review for alleged jury charge error is abuse of discretion. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). The trial court has broad discretion in submitting the jury charge, and it abuses its discretion only when it acts without reference to any guiding rules or principles. *Id.*

If an increase in the student services fee is greater than ten percent of the fee charged for the previous academic year, the increase must be approved by a majority vote of the student government. Act of June 16, 1991, 72nd Leg., R.S., ch. 844, 1991 Tex. Gen. Laws 2912, 2913, (amended 2001). In the District's view, the student government must approve an increase generally. The Class counters that this interpretation is absurd because no rational student would approve an unlimited increase in the fees he or she would pay. We agree with the Class. The statute requires student government approval of a greater than ten percent increase. If the increase in the student services fee will be greater than ten percent from the previous academic year, the exact amount of the increase must be approved by the student government. The question submitted to the jury was not erroneous.

The District also complains of the trial court's instruction that a vote requires affirmative action. The trial court instructed the jury that inaction or silence does not constitute a vote. This Court has held that the word vote "carries with it the implication of affirmative choice by action" and it "cannot be equated with total failure of choice." *Wooley v. Sterrett*, 387 S.W.2d 734, 740 (Tex.Civ.App.-Dallas 1965, no writ). The case relied upon by the District is distinguishable. *See Nash v. Civil Serv. Comm'n*, 864 S.W.2d 163 (Tex.App.-Tyler 1993, no writ). In *Nash*, a commissioner stated what he believed the commissioners had unanimously agreed to in executive session. The commissioner then asked the other two commissioners if they had anything to add and they each said they did

not. *Id.* at 166. The response of the two commissioners confirmed what all three commissioners had agreed to in executive session. We hold the trial court did not err in its instruction to the jury. We overrule the District's third issue.

### DURESS

In its fourth issue, the District asserts the trial court erred in granting summary judgment to the students that they paid the technology fee and the increase in the student services fee under duress.

Voluntary payment of an illegal tax or fee will not support a claim for repayment. *Johnson Controls, Inc. v. Carrollton Farmers Branch Indep. Sch. Dist.*, 605 S.W.2d 688, 689 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.). To overcome this rule, a plaintiff must show that he or she paid the fee under express or implied duress. *Id.* Two factors distinguish a fee paid under duress from a fee paid voluntarily: (1) the type of detriment that results to the taxpayer from a failure to pay; and (2) the type of means available to the governmental entity to ensure payment. *Camacho v. Samaniego*, 954 S.W.2d 811, 826 (Tex.App.-El Paso 1997, pet. denied). The first factor is met if a plaintiff will lose the ability to conduct his or her business. This is commonly known as the business compulsion rule. *See National Biscuit Co. v. State*, 134 Tex. 293, 303, 135 S.W.2d 687, 693 (1940). Tied in with this factor is the element of coercion. *See Johnson Controls*, 605 S.W.2d at 691. The second factor is satisfied if the governmental entity can impose a penalty without recourse to the courts. *Id.*

We apply the two *Camacho* factors to determine whether the Class paid the illegal fees under duress. If a student refused to pay the technology or student services fee, the District had the right under the education code to prohibit the student from registering for classes and even to deny the student credit for work done during a semester for failure to pay the illegal fees by the semester's end. *See* TEX. EDUC.CODE ANN. § 54.003 (Vernon 1996). The Class contends that these penalties preclude its members from pursuing their business as students and, therefore, are sufficient to satisfy the first *Camacho* factor. We agree. The District's remedy for nonpayment amounts to more than a threat of a penalty, it amounts to coercion. Like the plaintiffs in the business compulsion cases who are coerced to pay the illegal tax to maintain their right to do business, the students were coerced to pay the illegal fees to maintain their right to take classes at the District's colleges. In these situations, the governmental authorities are saying more than "we will penalize you with a monetary fine," they are saying "we will not allow you to do what you have a right to do." This constitutes coercion.

The District responds that taking college classes is not a business. Additionally, the District contends there are colleges outside of the District that the students may attend. The District interprets business too narrowly. It is the business of the students to take college classes and receive credit in return. The fact that other colleges are available does not remove the duress. Several courts have held that illegal fees paid by bail bondsmen were paid under duress because they could not post bail bonds in their respective counties if they refused to pay the fee. *Camacho*, 954 S.W.2d at 826–27; *Vannerson v. Klevenhagen*, 908 S.W.2d 37, 41 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *Bowles v. Reed*, 913 S.W.2d 652, 657 (Tex.App.-Waco 1995, writ denied); *Merrill v. Carpenter*, 867 S.W.2d 65, 69 (Tex.App.-Fort Worth 1993, writ denied). In each of these cases, the bail bondsmen

were being denied the right to post bonds in just one county.

As to the second *Camacho* factor, it is undisputed that the District did not have to resort to the courts to impose a penalty. Thus, the second factor is satisfied.

We conclude the Class paid the illegal fees under implied duress.[3] We overrule the District's fourth issue.

### SOVEREIGN IMMUNITY

■■■ In its fifth issue, the District asserts the trial court erred in ruling that immunity from liability did not bar the Class's lawsuit. The Class contends sovereign immunity does not apply because illegal taxes never become state property. An illegally collected fee should be refunded if paid under duress, without regard to the existence of a waiver of immunity. *Shaw v. Phillips Crane & Rigging of San Antonio, Inc.*, 636 S.W.2d 186, 188 (Tex. 1982); *Camacho*, 954 S.W.2d at 822. The supreme court has held that the State is liable for the repayment of illegal taxes. *National Biscuit Co.*, 134 Tex. at 303, 135 S.W.2d at 693; *Austin Nat'l Bank v. Sheppard*, 123 Tex. 272, 279, 71 S.W.2d 242, 246 (1934).

The District's reliance on *Texas International Airlines, Inc. v. Texas Alcoholic Beverage Commission*, 566 S.W.2d 693 (Tex.Civ.App.-Austin 1978, no writ), is misplaced. The court in that case addressed only the issue of sovereign immunity from suit. It merely holds that the legislature must authorize a suit for refund of illegal taxes. *Texas Int'l Airlines*, 566 S.W.2d at 696. It is undisputed that the legislature has consented to suit against the District. Having concluded that the Class paid the illegal fees under implied duress, we con-

clude the District was not immune from liability for the repayment of the illegal fees. We overrule the District's fifth issue.

### STATUTE OF LIMITATIONS

■■■ In its sixth issue, the District contends the trial court erred in ruling that the four-year statute of limitations applied to the Class's claims. The trial court ruled the Class's cause of action for recovery of illegal fees paid under duress was an action for debt subject to the four-year limitations period.

A two-year statute of limitations applies to a cause of action for conversion of personal property. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.2002). A cause of action for debt must be filed within four years of its accrual. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon Supp.2002).

In its petition, the Class alleged it was entitled to: (1) declaratory judgment that the technology fee and the increase in the student services fee were illegal; (2) recovery of the illegal fees paid under duress; and (3) recovery of attorney's fees.

The Class argues that a claim for illegal fees paid under duress is the equivalent of a claim for money had and received, and that a claim for money had and received is essentially an action for debt to which the residual four-year statute of limitations applies. We disagree. The Class's argument is inapplicable for several reasons. First, the Class did not plead a cause of action for money had and received against the District or its officers in their official

---

**3.** The District contends finding that the entire Class paid the fees under duress is inappropriate because duress is fact specific. We note, however, that courts applying the busi-

ness compulsion rule do not analyze the business to determine how critical it is to the person's livelihood. We do not find this argument persuasive.

capacities.[4] Second, unlike a claim for recovery of illegal fees, an action for money had and received is not premised on wrongdoing and lacks the element of duress. Third, an agreement is essential to a cause of action for debt. *See Arquette v. Hancock,* 656 S.W.2d 627, 630 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.). The Class did not allege any agreement between it and the District for repayment of the illegal fees.

Moreover, this Court has already addressed this issue. In *Bowles v. Clipp,* 920 S.W.2d 752 (Tex.App.-Dallas 1996, writ denied), the plaintiffs sued to recover unauthorized bond approval fees. We held that the two-year statute of limitations applied to a claim for conversion of personal property. *Bowles,* 920 S.W.2d at 760; *see Perkins v. Groff,* 936 S.W.2d 661, 668 (Tex. App.-Dallas 1996, writ denied). Several other courts have similarly held. *See Kubosh v. City of Houston,* 2 S.W.3d 463, 471 n. 7 (Tex. App.-Houston [1st Dist.] 1999, pet. denied); *Camacho,* 954 S.W.2d at 827; *Bowles,* 913 S.W.2d at 658.

Following *Bowles,* we conclude the trial court erred in applying the four-year statute of limitations. We sustain the District's sixth issue.

## Lump-Sum Recovery

 In its seventh issue, the District asserts the trial court erred in awarding a lump-sum "fluid recovery" that allows the trial court to redirect the undistributable portion of the damage award. Although no Texas court has so held, the District maintains this award is unlawful.

We disagree with the District's characterization of the award as a "fluid recovery." This term describes an award that benefits non-class members or a changing class membership. H. Newberg & A. Conte, Newberg on Class Actions, 3rd Edition § 10.17 (3d ed.1992). For example, a court may create a trust fund to benefit consumers generally where class members cannot be identified or individual recoveries are so small that it is not economically feasible to distribute individual payments.

The award in this case does not involve a "fluid recovery." The District produced records identifying all class members. The judgment reserves for later determination the issue of the distribution of any undistributable funds. This reservation, however, does not make the award a "fluid recovery." The trial court made an aggregate award to identifiable Class members. We overrule the District's seventh issue.

## Prejudgment Interest and Attorney's Fees

 In its final issue, the District asserts the trial court awarded inappropriate relief. Specifically, the District asserts the trial court erred in its award of prejudgment interest and conditional award of post-judgment attorney's fees and expenses.

 Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d

4. We note the Class alleged an alternative cause of action against the officers in their individual capacities for "money had and received/restitution/unjust enrichment." In its final judgment, the trial court dismissed all of the causes of action against the officers in their individual capacities. Because the Class did not allege a cause of action for "money had and received/restitution/unjust enrichment" against the District, we address the statute of limitations applicable only to the cause of action for recovery of illegal fees paid under duress.

507, 528 (Tex.1998). As a matter of policy, prejudgment interest encourages settlements and discourages delay. *Id.* at 529. Prejudgment interest accrues on the amount of the judgment during the period beginning on the earliest of either the 180th day after the defendant received written notice of the claim or on the date the lawsuit is filed. TEX. FIN.CODE ANN. § 304.104 (Vernon Supp.2002). A "claim" means a demand for compensation or an assertion of a right to be paid. *Robinson v. Brice,* 894 S.W.2d 525, 528 (Tex.App.-Austin 1995, writ denied).

In the trial court, the Class argued that a May 31, 1995 memorandum from Bolton, president of the student government at Brookhaven, to Dr. Walter Bumphus, president of Brookhaven, constituted a notice of claim, thus triggering prejudgment interest on the technology fee to commence on November 27, 1995.[5] The Class also relied on the District's discovery response that, "As of May 1995, the District was put on notice that Bolton believed it was not in compliance with the law."

■ The District counters that Bolton's memorandum was insufficient to constitute notice of a claim because it did not make a demand for compensation. We agree. Bolton's letter makes neither a demand for compensation nor an assertion of a right to be paid. It is irrelevant that the District may have anticipated litigation after its review of the memorandum. The purpose of prejudgment interest is to encourage settlement of claims. There was no claim to be settled. The Class did not present a claim against the District until it filed the lawsuit on April 13, 1998. Thus, prejudgment interest on technology fees paid *prior* to April 13, 1998 accrues from that date. *See* TEX. FIN.CODE ANN. § 304.104 (Vernon Supp.2002). Prejudgment interest on technology fees paid *after* April 13, 1998 accrues from the official census date of the semester during which the fee was paid.

■ The District also argues the trial court erred in including in the judgment a

---

**5.** The body of the letter reads:

I would like to take this opportunity to express my appreciation for the courtesies extended to me by the administration and staff since my election. It has been a pleasure to begin this endeavor in this manner. There are a few things which I would like to take care of, so I am taking this occasion to initiate these actions. First, pursuant to Texas statutes 54.503, and 54.5031, the Brookhaven Student Government will appoint 5 student members to a Student Fee Advisory Committee, post haste, to be accomplished by 6/20/95. I look forward to your appointment of 4 members to this same committee. As the committee has specific duties which impact the student service budget for 95/96, the committee will proceed as of the latter of, June 21, 1995 or the appointment of a[sic] enough members to constitute a quorum of the full committee.

In order that this committee may proceed with its appointed duties in an expeditious manner, I would appreciate your input on the best procedures to be followed in obtaining certain information. The first set of information the committee will need are copies of all Brookhaven budgets since August 1991, and a tracking analysis of all student fees as defined and described by 54.503 and 54.5031. This is needed for background and process evaluation, as well as compliance review. Please include tracking on all compulsory fees, including student service fees, registration fees and tech fees, as I believe they all are technically under the broad category of student service fees. Also, it would be very helpful if the committee could be provided a preliminary budget and analysis of 95/96.

By accomplishing the above, and with your assistance, we should make tremendous progress toward full compliance with the above mentioned statutes.

I appreciate your attention to these matters, as well as any advice or input you might have. Should you feel that we need a meeting over these matters, please contact me, I am at your disposal.

conditional award of attorney's fees. The parties stipulated that $271, 458.52 was the reasonable amount of attorney's fees and expenses to be awarded to the Class. The trial court awarded this amount to the Class. The trial court also provided that Class counsel could recover their attorney's fees and expenses incurred in executing the judgment. We conclude the trial court did not abuse its discretion in conditionally awarding Class counsel their attorney's fees and expenses for their post-judgment collection and distribution efforts. *See Medical Adm'rs,* 668 S.W.2d at 722.

We sustain the District's eighth issue to the extent it claims error in the trial court's computation of prejudgment interest.

## CROSS-APPEAL

■ By way of cross-appeal, the Class assigns error to the trial court's ruling that in the case of a multi-campus junior college district, section 54.503(f) of the education code requires a majority vote of the student government at each campus and that any increase would be implemented only at the campuses where it was approved. The Class asserts that all seven campuses must approve the increase before it becomes effective. If this interpretation is correct, the Eastfield students would be able to recover the increase in the fee because although its student government approved the increase, the other six campuses in the District did not do so.

Section 54.503(f) provided that a fee increase must be "approved by a majority vote of the students voting in an election held for that purpose or by a majority vote of the student government at the *institution.*" Act of June 16, 1991, 72nd Leg., R.S., ch. 844, 1991 Tex. Gen. Laws 2912, 2913, (amended 2001). "Institution" refers to institution of higher education.

The education code defines "institution of higher education" to include any public junior college. TEX. EDUC.CODE ANN. § 61.003(8) (Vernon Supp.2002). The statute is clear. In the context of a multi-campus junior college district, an increase will be effective at any of the campuses where a majority vote of the student government approves the increase. The Class's interpretation that a district-wide approval is necessary is untenable.

We overrule the Class's issue on its cross-appeal.

## CONCLUSION

We overrule the District's first, second, third, fourth, fifth, and seventh issues. We sustain the District's sixth issue and remand this cause to the trial court to compute damages based on the two-year statute of limitations. We sustain the District's eighth issue to the extent that it challenges the trial court's computation of prejudgment interest. We reform the trial court's judgment to reflect that prejudgment interest on the technology fees collected *prior* to April 13, 1998, accrues from that date and that prejudgment interest on the technology fees collected after April 13, 1998 accrues from the official census date of the semester during which the fee was paid. In all other respects, we affirm the trial court's judgment.